287 P.2d 615

**Lloyd FELDHUT, Plaintiff-Appellee,**

**v.**

**W. E. LATHAM and Roger Harris, d/b/a Strawn Drilling Company, a partnership, and American Insurance Co. of Boston, Mass., Defendants-Appellants.**

**Dwayne UPTAIN, Plaintiff-Appellee,**

**v.**

**W. E. LATHAM and Roger Harris, d/b/a Strawn Drilling Company, a partnership, and American Insurance Co. of Boston, Mass., Defendants-Appellants.**

**Arthur ROSE, Plaintiff-Appellee,**

**v.**

**W. E. LATHAM and Roger Harris, d/b/a Strawn Drilling Company, a partnership, and American Insurance Co. of Boston, Mass., Defendants-Appellants.**

No. 5931.

Supreme Court of New Mexico.

Sept. 7, 1955.

Iden & Johnson, Albuquerque, for appellants.

Brown & Wood, Farmington, for appellees.

McGHEE, Justice.

The claimants, Lloyd Feldhut, Dwayne Uptain and Arthur Rose, were members of a drilling crew working for the defendant drilling company on a well east of Blanco, New Mexico, and were injured while pushing a car being used by Benton Closson, a tool pusher working for the defendant. Separate claims for compensation were filed and after issue was joined the cases were consolidated and are presented here as one appeal.

The drilling crew was composed of the above named claimants, who were roughnecks on the rig, one Archuleta, who lived in Blanco and was also a roughneck, and Don Waggoner, the driller. All except Archuleta lived in or near Durango, Colorado, and they drove back and forth to work each day. The members of the crew who lived in Colorado alternated in furnishing a car, and they would pick up Archuleta at Blanco.

On the day of the accident, Waggoner furnished the car and did the driving. When they were a few miles west of Blanco they came upon Closson with his car parked on the side of the road out of gasoline. Closson was en route from the well with drilling reports which he was to deliver to the drilling company at Bloomfield. A tool pusher in oil and gas fields, it may be here stated, occupies the position of general foreman for his employer, while the driller occupies the position of foreman over the other members of the crew.

Closson asked or directed those riding in the car (exclusive of Rose who was asleep and did not awaken until the accident occurred) to push his car to Bloomfield, but was told it was nearer to Blanco and they would prefer to push him to that point. To this suggestion or request Closson agreed.

All except Rose assisted in turning Closson's car around and headed it towards Blanco. Closson was at the wheel of his car, while Waggoner was at the wheel of his automobile. Feldhut and Uptain remained out of the car to see that the front bumper of the Waggoner car made proper contact with the rear bumper of the car to be pushed. After observing a good contact had

been made they got in the car with Waggoner, who proceeded to push the other car down the road. Very shortly thereafter an accident occurred resulting in injuries to the above named claimants.

Feldhut was awarded 100 percent permanent disability; Uptain was given 100 percent disability for five weeks, and Rose 100 percent disability for four weeks. The sum of $2,000.00 was allowed as attorneys' fees.

The first point relied upon by defendants for reversal is:

"Claimants failed to sustain burden of proof and failed to introduce substantial evidence at the trial proving or tending to prove, or from which any reasonable inference could be drawn, that the claimants, Lloyd Feldhut, Dwayne Uptain, and Arthur Rose, were injured by accident and at such time of injury were performing a service or services arising out of and in the course of their employment and that their injuries were proximately caused by accident arising out of and in the course of their employment."

This is a strange case from a factual standpoint. All persons riding in the two cars testified in the case but no one was asked how the accident occurred, except perhaps one who said he was watching a road grader and did not know; but all agree there was an accident while Waggoner was pushing the car ahead, and we are satisfied the evidence, although in part circumstantial, is sufficient to establish the fact the accident which caused the injuries occurred during the pushing operation.

This leaves for determination under the above point the question of whether the claimants were in the course of their employment at the time, or whether, as claimants further contend, they were in fact being paid for travel time, thus bringing them within the rule of Barrington v. Johnn Drilling Co., 1947, 51 N.M. 172, 181 P.2d 166.

The defendant drilling company had moved into San Juan County from west Texas where transportation costs had been paid at the rate of seven cents per mile up to 100 miles for the one furnishing the car; when the company came to San Juan County such allowances were not made but the pay of each member of the crew was increased ten cents per hour. The claimants urged this increase was in lieu of transportation allowances, while the employer claimed it was necessary to raise the hourly rate in order to get experienced men to perform the work.

We have carefully examined the evidence on this point, and the most that can be said for it is that there was only speculation and gossip among the crew members as to the reason for the raise. The evidence is, therefore, insufficient to bring claimants under the travel-pay rule.

It is clear, however, the tool pusher was engaged in the performance of his duty to the company when he was taking the drilling reports to Bloomfield. It was his custom to return immediately to the well after delivering the reports, to supervise the members of the crew in the drilling operations and also perform his other duties in connection with the work on the well. It is undisputed that he at least asked the claimants, except Rose, to push his car, and while he testified he would not have fired them if they had refused to assist him, he also stated he would not have felt very well towards them. Whether it was a request or command, it amounted to the same thing—the services of those awake in the Waggoner car, and of that car, were obtained; they were serving the interests of their employer at the time of the accident at the request of their general foreman. Each injured workman, aside from the sleeping employee, was kept on the alert from the moment his services were invoked by the tool pusher until the time of the accident, standing by to render any aid called for on the special mission in which he was engaged. At any moment an emergency might develop, with a dead car being pushed, and the injured workmen were alerted and ready to meet it. Hence, they were literally in the course of their employment when the accident arose.

We feel the defendant Latham, (one of the partners in the drilling company) probably not knowing Rose was asleep during the entire operation correctly appraised the situation as to Feldhut and Uptain in his conversation with claimant Rose. We quote from the record:

"Q. And what was said with respect to this accident by Mr. Latham? A. Well, he asked me at that time if I had received anything—any compensation or anything, and I told him no, and he advised me to file a claim for hospitalization and doctor's fee, bills and compensation—that he had paid several thousand dollars worth of premiums here to take care of such accidents as this.

"Q. By premiums he meant insurance premiums? A. Yes, sir, and he also felt by pushing Mr. Closson's car * * *

"Mr. Paulantis: I object to anything he might have felt.

"Court: Sustained.

"Mr. Brown: What was his language, Mr. Rose, with respect to pushing Mr. Closson's car, what did he say, not what he felt, but what he said? A. He said we were actually working for the Strawn Drilling Company by pushing the car.

"Q. And he suggested to you at that time that you file a claim for benefits under the Compensation Act? A. Yes, sir."

The officials of the insurance carrier evidently did not agree with Latham as the claims were contested.

A like admission by an employer was held sufficient to sustain an award in O'-Boyle v. Harry Seitz & Sons, 1932, 105 Pa.Super. 135, 160 A. 145. In Amend v. Amend, 1950, 12 N.J.Super. 425, 79 A.2d 742, in compensation proceedings against the employer which were defended by his insurance carrier, it was held forms which had been filled out by the insurer and filed with the Department of Labor, reciting the injury to the employee while cranking a car, that it was paying compensation and furnishing medical care, were sufficient to sustain an award.

This court held in Lyons v. Kitchell, 1913, 18 N.M. 82, 134 P. 213, Ann.Cas. 1915C, 671, that proof of admissions of a material fact by a party which, if true, were of a character sufficient to authorize a verdict, was enough to support a verdict against the party making the admission.

■ We hold the admission was competent evidence the workmen were injured in an accident arising out of and in the course of their employment, but it was not conclusive on the point. In the case of Rose the evidence is overwhelming that he was not taking any part in the operation except riding while asleep, and we must hold that he may not recover. If the case had been less one-sided as to Rose, the admissions would have been, no doubt sufficient to sustain an award. Craciola v. Lewis, 1931, 233 App.Div. 437, 253 N.Y.S. 752.

■ It is true the pay of the drilling crew did not begin until they went to work on the well and it ceased when they quit at the end of their tower, but this is not a defense where the employee otherwise brings himself within the terms of the compensation act. Wilson v. Rowan Drilling Co., 1950, 55 N.M. 81, 227 P.2d 365; Cardillo v. Liberty Mutual Co., 1947, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; Cudahy Packing Co. of Nebraska v. Parramore, 1923, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366.

■ We are of the opinion the claimants, except Rose, were in the course of their employment at the time of the accident and the defendants are liable for their injuries under our Workmen's Compensation Act, 1953 Comp. § 59–10–1 et seq.

■ Under their second point the defendants assert the trial court erred in awarding judgment for attorneys' fees to the attorneys for the claimants, and with this contention we are in accord. Judgment for the fees should have run to the claimants and not to the attorneys. La. Rue v. Johnson, 1943, 47 N.M. 260, 141 P. 2d 321. This error, however, may be corrected on remand and a new judgment entered.

The judgment will be sustained as to the awards made to Feldhut and Uptain, reversed as to the award made to Rose, and the attorneys' fees for services rendered below will be reduced to $1,800. Feldhut and Uptain will be awarded $600 for the services of their attorneys in this court.

It is so ordered.

COMPTON, C. J., and LUJAN and SADLER, JJ., concur.

KIKER, J., not participating.