370 P.2d 816

Bessie BROWN, Widow of Edward Lee Brown, Deceased, and parent of David Clyde Brown, Randy Lee Brown and Robert Donald Brown, minor children of Bessie Brown and Edward Lee Brown, Deceased, Claimant, Plaintiff-Appellant,

v.

ARAPAHOE DRILLING COMPANY, Employer, and The Aetna Casualty and Surety Company, Insurer, Defendants-Appellees.

No. 6858.

Supreme Court of New Mexico.

April 9, 1962.

McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, for appellant.

Gilbert, White & Gilbert, Sumner S. Koch, Santa Fe, for appellees.

CARMODY, Justice.

This appeal is from the denial of a claim for workmen's compensation filed by the widow of a deceased workman.

The principal question requiring determination relates to the application of the "dual purpose doctrine" to the statutory exclusion of "going and coming from" work, as provided in § 59–10–12(*l*), N.M. S.A., 1953 Comp. A problem with respect to election of remedies as between a workmen's compensation claim and a suit against a third-party tort-feasor is also to be considered.

■ The findings of fact by the trial court are not attacked and, therefore, are binding on us. See, Dowaliby v. Fleming, 1961, 69 N.M. 60, 364 P.2d 126, and cases cited therein. Therefore, summarizing the material facts as to this issue: The deceased Brown was a driller in charge of the crew which worked on a drilling rig from four o'clock, P.M., until midnight. Brown had authority to hire and fire the members of the crew and was paid fifty-five cents per hour more than the other members. The well site was some fifty to sixty miles from the homes of the workers, and the employer did not furnish transportation, as a result of which the deceased and three other members of his crew had a carpooling arrangement by which each drove his own car every fourth day. On the day in question, the car was owned and driven by one of the other members of the crew. The employees furnished their own gasoline, except that at times they helped themselves to gasoline from a company tank at the well site, without either permission or objection by the company. The tool pusher, or general foreman, was named McAfee, who was Brown's immediate supervisor, and it was McAfee's responsibility to deliver the drilling report, or daily log, to the company offices at Farmington, New Mexico. Sometime before midnight on the day in question, McAfee wanted to leave the well location and asked Brown to bring the drilling report with him when he finished his shift. McAfee was to pick up the report the following morning at Brown's house, sign it, and deliver it to the company offices. Brown had never performed this service before, but on this occasion it was important that the report be delivered to the office, inasmuch as it was at the end of the payroll period. When the men left the well site sometime after midnight, Brown put the report in the glove compartment of the car. On the way home, on the public highway, a single-car accident occurred, and Brown was killed.

In addition to the above facts, the trial court, by finding No. 25, found that the trip made by Brown was for the purpose of returning home, and would have been made in the same manner if he had not been taking the record with him. By finding No. 26, the court found, in effect, that the taking of the record into town would not have required a separate trip by anyone, but that if Brown had not been making the trip to his home, the tool pusher would

have requested one of the other employees to take the record with him, or the tool pusher himself would have waited until the end of the shift to take it. As a part of this finding, it was also determined that the tool pusher was furnished a company car and that the making of such trips was a part of his regular employment. In finding No. 29, it was determined that the pay of Brown did not include compensation for any services other than those performed at the well site.

Appellant urges that, under the facts, judgment should have been awarded to the claimants, because the carrying of the drilling report was within the course of Brown's employment, particularly when it is considered that Brown received extra pay as a driller and by reason of the using of the company gasoline for making some of the trips.

The trial court's finding No. 29, supra, disposes of the extra-pay assertion, and in this respect distinguishes this case from Wilson v. Rowan Drilling Co., 1951, 55 N.M. 81, 227 P.2d 365. Brown was not paid for getting his crew back and forth to and from the well site. The occasional utilization of the company's gasoline can hardly be considered as justifying a holding that the company intended to extend the course of employment to going to and from the site, especially where there was no understanding or express permission allowing such acts. We do not feel that it

can be considered as payment by the employer of all or part of the cost of transportation, so as to bring this case within one of the recognized exceptions to the "going and coming" rule. Thus, Barrington v. Johnn Drilling Co., 1947, 51 N.M. 172, 181 P.2d 166, is not in point.

Therefore, it would seem that the claimant's right to recovery must depend entirely upon the transporting of the report in the manner above related.

The statutory language pertinent to this portion of the case is as follows:

"The right to the compensation provided for in this act * * * shall obtain in all cases where the following conditions occur: * * * (b) Where, at the time of the accident, the employee · is performing service arising out of and in the course of his employment. * * *" Section 59–10–6, 1953 N.M.S.A.

"* * * injuries to workmen, * * * shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the approximate cause of which injury is not the employer's negligence." Section 59–10–12($l$), 1953 N.M.S.A.

The answer to the problem is to be found in Marks' Dependents v. Gray, 1929, 251 N.Y. 90, 167 N.E. 181, an opinion by Judge Cardozo, in which it was said:

"* * * We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

The above test, as said in 1 Larson's Workmen's Compensation Law, at 241, is "a formula which, *when rightly understood and applied,* has never yet been improved upon." As an aid in understanding and applying the test, Professor Larson, at 244, states the following:

"* * * One detail must be stressed to make this rule complete: it is not necessary, under this formula, that, on failure of the personal motive, the business trip would have been taken by *this particular employee at this particular time.* It is enough that someone sometime would have had to take the trip to carry out the business mission. Perhaps another employee would have done *it;* perhaps another time would have been chosen; but if the trip would ultimately have had to be made, and *if* the employer got *this necessary item* of travel accomplished by combining it with this employee's personal trip, it is accurate to say that it was a concurrent cause of the trip, rather than an incidental appendage or afterthought."

Applying the rule to the facts before us, it appears that it was in furtherance of the employer's interest that the drilling report be taken to Farmington. If McAfee had performed the duty, he would have been in the course of his employment. However, he delegated to Brown, as the driller, the performance of this item of work. If Brown had not been able, or perhaps unwilling, to perform, then some other employee, or McAfee himself, would have had to do the act. Viewed thusly, it is apparent that Brown himself was performing a service "arising out of and in the course of his employment," and that portion of the statute denying recovery when "coming from work" has no application.

In this respect, the case falls within the rule, but not the facts, of Wilson v. Rowan Drilling Co., supra, and is not controlled by Ross v. Marberry & Company, 1960, 66

N.M. 404, 349 P.2d 123. The exact fact situation is not found in any of the cases cited to us, nor in any that we have found. However Feldhut v. Latham, 1955, 60 N.M. 87, 287 P.2d 615, is somewhat similar. In that case, the tool pusher was enroute from the well with drilling reports and ran out of gasoline. The claimants were members of a drilling crew, and, at the request of the tool pusher, were cooperating in pushing the tool pusher's car down the road. An accident occurred, injuring some of the employees, and we held that certain of the employees were "literally in the course of their employment." The same is true here as to Brown. See, also, Gingell v. Walters Contracting Corp. (Mo.App.1957), 303 S. W.2d 683; and Olson Drilling Co. v. Industrial Commission, 1944, 386 Ill. 402, 54 N.E.2d 452. It is the service to be performed for the employer that is material, not what may be the dominant or primary purpose of the trip.

Appellees seek solace by reason of the fact that, admittedly, no negligence was shown on the part of the employer, and that, under the statute, in a true "coming and going" situation, the employee cannot recover absent such a showing. Appellees cite Cuellar v. American Employers' Ins. Co. of Boston, Mass., 1932, 36 N.M. 141, 9 P.2d 685, and Caviness v. Driscoll Const. Co., 1935, 39 N.M. 441, 49 P.2d 251, but neither of these holdings applies to the instant case, because here Brown was still performing a service arising out of and in the course of his employment, whereas in both Cuellar and Caviness the employee had left his work and was going home, doing nothing to further his employer's cause. Of course, in Cuellar, negligence was proven and recovery allowed; but in Caviness, recovery was denied because of lack of proof of negligence.

Proceeding to the other issue raised by appellants, the trial court held that, in addition to the deceased's not being in the course of his employment, the claimants were estopped from claiming compensation, because the administrator of Brown's estate had unsuccessfully sought damages against the driver of the car, and the court found that the employer and its insurer were thereby deprived of the right of subrogation.

The portion of the statute applicable reads as follows:

"The right of any workman, or, in case of his death, of those entitled to receive payment or damages for injuries occasioned to him by the negligence or wrong of any person other than the employer as herein defined shall not be affected by this act (§§ 57–901—57–931 [59–10–1 to 59–10–31]), but he or they, as the case may be, *shall not be allowed to receive payment or recover damages therefor* and also claim compensation from such employer here-

under, and in such case the receipt of compensation from such employer hereunder shall operate as an assignment to the employer, his or its insurer, guarantor or surety, as the case may be, or [of] any cause of action, to the extent of the liability of such employer to such workman occasioned by such injury which the workman or his legal representative or others may have against any other party for such injuries or death." (Emphasis added.) Section 59–10–25, 1953 N.M.S.A.

In Kandelin v. Lee Moor Contracting Co., 1933, 37 N.M. 479, 24 P.2d 731, and in White v. New Mexico Highway Commission, 1938, 42 N.M. ·626, 83 P.2d 457, we had occasion to consider this portion of the statute, but neither case decided the precise issue before us now. Kandelin dealt with a suit against a third party after compensation had been paid, and White was concerned with estoppel of the right to seek compensation after the workman had executed a release to a third-party tort-feasor. In White, we held that the release barred the action for compensation. Admittedly, if Brown's administrator had recovered in the third-party action, White v. New Mexico Highway Commission, supra, would be controlling; but here there was a judgment for the defendant, entered after a jury trial, and therefore no one has "received payment or recovered damages" and also claimed compensation. The statute plainly in-tends to prevent dual recovery, and we do not believe that an erroneous selection or election of remedy should be construed as forever terminating the right to receive the benefits of the Workmen's Compensation Act. The employer, or its insurer, had the right to reimbursement of any amounts paid the employee, in the event the employee successfully sued a third party (see, Royal Indemnity Co. v. Southern Cal. Petroleum Corp., 1960, 67 N.M. 137, 353 P.2d 358), but the right to indemnity is not such a right as should operate to destroy the benefits of the Workmen's Compensation statute. Here there has been no prejudice or detriment to the employer or his surety, except the loss of the rather doubtful right to have participated in the third-party suit, and, even then, it would be pure speculation and conjecture as to whether the result of the suit would have been any different. In any event, it is difficult to comprehend how the employer, while at all times denying the right to compensation, would have had any standing in the third-party suit, even if advised of its pendency.

The purpose of our statute is to protect the workman, or those claiming the right to receive payment, and whatever right the employer or its insurer has to re-imbursement follows payment of compensation. (see; Reid v. Styron, 1961, 69 N.M. 262, 365 P.2d 912), but does not precede it.

The intent of the statute is to prevent double recovery, not to preclude any recovery at all. To rule otherwise would be to place a strained construction on the legislative enactment, which we decline to do.

We recognize that there are decisions contrary to that herein announced. However, the wording of other statutes is different, particularly that of Texas, and the general trend seems to be away from the requirement of election of remedies. See, 2 Larson's Workmen's Compensation Law, §§ 73.10 and 73.30. In any event, we feel that the pursuit of a mistaken remedy did not, under the facts here present, prejudice the employer or its insurer.

From what has been said, it follows that the trial court was in error, both in concluding that the appellant was estopped by an election, and in its determination that the deceased Brown was killed in an accident not arising out of his employment.

The judgment appealed from is reversed, and the cause remanded to the trial court with directions to set aside its decision and the judgment, and to render a decision and judgment in conformity with this opinion. IT IS SO ORDERED.

CHAVEZ and MOISE, JJ., concur.

COMPTON, C. J., and NOBLE, J., not participating.