664 P.2d 1000

**Kathleen Mary GARCIA, Individually and as Mother and Next Friend of Alice Irene Garcia and Jerry Richard Garcia, minors, Plaintiff-Appellee,**

v.

**MIDDLE RIO GRANDE CONSERVANCY DISTRICT and American Manufacturers Mutual Insurance Company, Defendants-Appellants.**

No. 5790.

Court of Appeals of New Mexico.

April 12, 1983.

Certiorari Denied June 2, 1983.

Richard E. Ransom, P.A., Terry Word, Albuquerque, for plaintiff-appellee.

Arthur O. Beach, Kim E. Kaufman, Keleher & McLeod, P.A., Albuquerque, for defendants-appellants.

## OPINION

DONNELLY, Judge.

The defendants Middle Rio Grande Conservancy District (District) and its insurer, American Manufacturers Mutual Insurance Company (American), appeal from a judgment awarding workmen's compensation benefits to plaintiff, and her two minor children.

Defendants have raised five issues on appeal: (1) claim of trial court error in awarding workmen's compensation benefits because plaintiff's settlement with a third-party tortfeasor bars further recovery under the Workmen's Compensation Act; (2) claim of error in failing to find that award

of additional workmen's compensation benefits is barred by reason of plaintiff's remarriage; (3) trial court error in failing to properly credit payment of a lump sum award; (4) trial court error in calculating decedent's average weekly wage; and (5) excessive attorneys fees. We reverse.

*Facts*

On March 14, 1979, Joseph R. Garcia, the husband of plaintiff Kathleen Mary Garcia, was killed when the vehicle he was driving was struck by an Atchison, Topeka and Santa Fe Railway Company (Railway) freight train at a railroad crossing near Socorro. At the time of his death, decedent was driving a vehicle owned by his employer, the District, and was carrying out duties in the course and scope of his employment. During their marriage, decedent and plaintiff had two children, Alice Irene Garcia and Jerry Richard Garcia, both minors.

Following the death of decedent, the District and American paid decedent's medical and funeral expenses and voluntarily commenced paying workmen's compensation death benefits to plaintiff and the two minor children pursuant to § 52–1–46, N.M.S.A.1978. Plaintiff, as a widow and the mother of two minor children was paid weekly benefits in the sum of $156.35 per week from March 19, 1979, to January 19, 1980.

On September 11, 1979, plaintiff, individually and as next friend of her two minor children, filed a wrongful death action in federal court against the Railway seeking damages resulting from the death of Joseph R. Garcia. Thereafter, on January 19, 1980, plaintiff married Lorenzo Rodriguez. Immediately following plaintiff's marriage, pursuant to § 52–1–46(C)(4), *supra*, American paid plaintiff a lump sum payment consisting of two years compensation benefits totalling $10,975.12, and continued paying workmen's compensation benefits to the minor children in the amount of $50.82 per week.

On April 7, 1980, plaintiff obtained a divorce from her new husband on the grounds of incompatibility. Within thirty days from the entry of the decree, plaintiff sought to reopen the divorce proceedings, and on May 16, 1980, the district court entered an order setting aside the final decree of divorce and granting an annulment of plaintiff's marriage on the basis that on January 19, 1980, she "was unable to enter into a valid marriage contract because of temporary mental disability."

On July 8, 1980, the plaintiff settled the wrongful death suit against the Railway on her own behalf and also on behalf of her two minor children for the sum of $28,-000.00. From the settlement proceeds, plaintiff paid $7,000.00 to American in satisfaction of its right of reimbursement for workmen's compensation benefits. From the remaining $21,000.00, plaintiff paid her attorney who had brought the suit, (not her counsel herein), and retained the balance of the recovery, approximately $8,500, for herself and her two children.

Several months later, on December 22, 1980, plaintiff, through new counsel, filed suit in her individual capacity and as next friend of her children against the District and American, seeking the payment of additional workmen's compensation benefits for herself and her two minor children and alleging that defendants had failed and refused to pay compensation benefits due plaintiff.

The answer of the District and American admitted that decedent had been killed while acting in the scope and the course of his employment and that plaintiff and her two children were the widow and surviving minor heirs of decedent. It asserted *inter alia* that plaintiff was not entitled to additional workmen's compensation benefits (1) because plaintiff's remarriage resulted in the payment of a lump sum compromise and settlement as to her benefits and (2) because plaintiff's settlement of the action individually and on behalf of her two minor children against the Railway, as a third-party tort-feasor, legally barred any additional recovery for her or her children.

Following a trial on the merits, the trial court adopted findings of fact and conclusions of law in favor of plaintiff and en-

tered judgment on April 5, 1982, awarding plaintiff and her children workmen's compensation benefits payable at the rate of $167.89 per week commencing March 14, 1979 (the date of decedent's death) and continuing for a period of 600 weeks. Plaintiff was awarded attorney's fees in the sum of $4,680.00. The court further determined that defendants should have paid compensation in the sum of $25,855.00, through February, 1982, and that after crediting defendants with payment of the sum of $22,743.28, including the $10,975.12 paid to the plaintiff by defendants as a lump sum settlement upon her remarriage, $3,111.72, was still owing to plaintiffs as of February 28, 1982.

### Effect of Third Party Settlement

Defendants assert that the trial court erred in failing to find plaintiff's settlement of the wrongful death action against the Railway barred plaintiff's claim for further workmen's compensation benefits against defendants. Although acknowledging that the rule enunciated in *Britz v. Joy Mfg. Co.,* 97 N.M. 595, 642 P.2d 198 (Ct.App.1982), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040, 1982, militates against the decision of the trial court herein, plaintiff argues that *Britz* should be overruled and we should adopt a different rule that would permit her and her children to receive workmen's compensation benefits despite plaintiff's recovery of damages against the Railway, unless there is a showing that the workman or his dependents have obtained a double recovery or that the workman or his heirs have prejudiced the right of the employer or compensation carrier to a right of reimbursement.

The decision in *Britz v. Joy Mfg. Co., supra,* is dispositive of the instant appeal. There the court held:

> The law in New Mexico is clear that having recovered from a third party tortfeasor, a workman is barred from receiving workmen's compensation benefits. Section 52–1–56(C), [N.M.S.A.1978]; *White v. New Mexico Highway Commission,* 42 N.M. 626, 83 P.2d 457 (1938); *Thomas v. Barber's Super Markets, Inc.,*

74 N.M. 720, 398 P.2d 51 (1964). Where a claimant has sought relief from a third party the amount of the recovery is for the full loss or detriment suffered by the injured party and makes him financially whole, and thus any subsequent compensation claim is barred. *Castro v. Bass,* 74 N.M. 254, 392 P.2d 668 (1964); *Seminara v. Frank Seminara Pontiac-Buick, Inc.,* 95 N.M. 22, 618 P.2d 366 (Ct.App.1980).

In *Britz, supra,* plaintiff argued that although he had settled with a third party, he recovered an amount less than he was entitled to under the Workmen's Compensation Act, consequently he should be entitled to an award of compensation benefits despite the settlement. The court in *Britz,* referring to § 52–1–56(C), *supra,* observed: "Plaintiff's argument is faulty for the following reasons. First, it assumes that the statute's sole purpose is to protect the employer's right to reimbursement. This is not so. One object of the statute is to prevent dual recovery. *Brown* [*v. Arapahoe Drilling Company,* 70 N.M. 99, 370 P.2d 816 (1962)]." *See also Security Insurance Co. of Hartford v. Chapman,* 88 N.M. 292, 540 P.2d 222 (1975). Justice McManus, speaking for the court in *Security Insurance Co.,* stated that "once an employee has recovered a judgment against a third-party tort-feasor, that employee may not thereafter claim [workmen's] compensation for the same injury."

Section 52–1–56(C), *supra,* specifies:

> The right of any workman, or, in case of his death, of those entitled to receive payment or damages for injuries occasioned to him by the negligence or wrong of any person other than the employer . . . shall not be affected by the Workmen's Compensation Act, *but he or they, as the case may be, shall not be allowed to receive payment or recover damages therefor and also claim compensation from the employer . . . .* [Emphasis added.]

New Mexico follows the rule that where a plaintiff has sought relief from a third-party tort-feasor the amount of the recovery is for the full loss or detriment

suffered by the injured party and makes him financially whole. *Seminara v. Frank Seminara Pontiac-Buick Inc., supra; Castro v. Bass, supra.* After a workman or his survivors have effected a recovery of damages through a settlement with a third party for injuries sustained by the workman and incurred during the scope and course of his employment, any subsequent workmen's compensation claim is barred. *Seminara v. Frank Seminara Pontiac-Buick Inc., supra; Strickland v. Roosevelt County Rural Electric Coop.,* 22 N.M.Bar.Bull. 86 (Ct.App., Jan. 27, 1983), *cert. denied,* 22 N.M.Bar.Bull. 169 (Feb. 17, 1983); *Security Insurance Company of Hartford v. Chapman, supra; White v. New Mexico Highway Commission, supra.* The exception to this rule noted in *Brown v. Arapahoe Drilling, supra,* where a workman sues a third party and fails to obtain any recovery, is not applicable herein.

The basis for the decisional precedent of *Britz* stems from Supreme Court decisions in *Brown v. Arapahoe Drilling Company, supra; Castro v. Bass, supra; White v. New Mexico Highway Commission, supra;* and *Chapman, supra,* which in turn are constructions of the legislative provisions contained in § 52–1–56(C), *supra.* As observed in *Bottijliso v. Hutchinson Fruit Co.,* 96 N.M. 789, 635 P.2d 992 (Ct.App.1981), "[t]he sagacity of making changes in workmen's compensation statutes, or rights created thereunder, has been generally held to be outside the province of the courts (Citations omitted.)" Plaintiff argues that the instant case is distinguishable from *Britz,* however, because (1) the trial court found defendants were estopped from asserting any defense because they had an ethical duty to inform Mrs. Garcia prior to the time she settled the third-party claims that the settlement would foreclose the right of plaintiff and her children to further compensation benefits; (2) defendants by their counsel entered into a contract with the attorney who represented plaintiff in the wrongful death action agreeing that the settlement would not bar the right of plaintiff and her children to future compensation benefits; and (3) even if Mrs. Garcia is barred from the

recovery of additional benefits, this result should not be applied to the minor children.

*Claims of Estoppel and Contract*

Under the facts herein, plaintiff, without prior consultation with defendants, filed a wrongful death action against the Railway. Before finalizing a settlement of that case, plaintiff through her attorney contacted one of the attorneys for American and discussed with him the right of defendants to reimbursement out of any recovery plaintiff might obtain. Prior to that time defendants had paid to plaintiff or on plaintiff's behalf: $262.00 in medical benefits for decedent, $1,500.00 for decedent's funeral expenses and approximately $6,879.40 in weekly compensation payments of $156.35 per week from March 19, 1979, to January 19, 1980. Additionally, when plaintiff remarried on January 19, 1980, defendants further paid plaintiff a lump sum of $10,975.12. Defendants also continued to pay the minor children the weekly sum of $50.82 from January 19, 1980, to April 7, 1980, and amounting to a total of approximately $609.84.

■ At the time plaintiff settled her suit against the Railway, defendants were entitled to reimbursement for monies or benefits paid out, totalling approximately $20,226.36. The District and American agreed to accept $7,000 in satisfaction of their right of reimbursement out of the funds paid in September, 1980, as plaintiff's settlement with the Railway. This agreement to accept $7,000 as full payment of the Railway's then right to reimbursement instead of a sum exceeding $20,000.00 did not constitute an agreement to continue making further payments of workmen's compensation benefits to Mrs. Garcia or the minor children following plaintiff's settlement.

We have carefully reviewed the entire record and find no evidence which supports the trial court finding that defendants agreed to continue paying workmen's compensation benefits following plaintiffs' third-party settlement, nor conduct on the part of defendants which would subject them to a claim of estoppel.

The trial court's finding No. 16 states that plaintiff's prior counsel "made no representation of any kind to Mrs. Garcia as to whether or not the workmen's compensation benefits ... would continue or would terminate after the settlement of the wrongful death suit." Finding of fact No. 17, states:

[Plaintiff's attorney] *felt that that [sic] he and* [Defendants attorney] *had reached an agreement* not only that American Manufacturers Mutual would accept the sum of $7,000 under their right of reimbursement, but also that all future compensation benefits due Mrs. Garcia and/or her children would continue after settlement of the third party claim. [Emphasis added.]

The trial court also adopted an alternative conclusion, requested by plaintiffs:

5. ... An Agreement was reached between Mrs. Garcia's attorney ... in the third-party case and the attorney for American Manufacturers Mutual Insurance Company ... that future compensation benefits would not be terminated by reason of the settlement of the third-party case.

There is no substantial evidence indicating defendants' attorney ever expressly agreed that in accepting the sum of $7,000 as reimbursement instead of the sum of approximately $20,226.36, to which American was entitled, also amounted to an agreement to continue making future additional workmen's compensation benefits.

■ In order to establish a binding contractual agreement, plaintiff must prove a meeting of the minds was arrived at between the parties or that a mutual agreement was objectively manifested by each party. *Trujillo v. Glen Falls Insurance Company,* 88 N.M. 279, 540 P.2d 209 (1975). Silence is acceptance of a contract only when there is a duty to speak. *Goodman v. Darden, Doman & Stafford Associates,* 33 Wash.App. 278, 653 P.2d 1371 (1982). The existence of a contract between parties is generally a question of law to be decided by the trial court. However, when the existence of a contract is at issue and the evi-

dence is conflicting or permits more than one inference, it is for the finder of fact to determine whether the contract did in fact exist. *Segura v. Molycorp,* 97 N.M. 13, 636 P.2d 284 (1981).

■ We are mindful of the standard of appellate review set out in *Mountain States Construction Company v. Aragon,* 98 N.M. 194, 647 P.2d 396 (1982): "On appeal, we must view the evidence in a light most favorable to support the findings and conclusions of the trial court. The trial court will not be reversed unless the findings and conclusions cannot be supported by the evidence or by permissible inferences therefrom." The evidence, however, does not support the finding that defendants agreed to continue paying workmen's compensation benefits after the third-party settlement. Further, the evidence fails to support the finding that defendants owed a duty to inform plaintiff of the legal consequences of the third-party settlement. As held in *Britz v. Joy Mfg. Co., supra,* the employer and insurance carrier were "under no affirmative duty to tell plaintiff the effect of a settlement" with a third party. In *Britz,* plaintiff was not represented by counsel; in the instant case, plaintiff was represented by counsel in the prosecution of the wrongful death action.

*Action Brought as "Next Friend"*

Plaintiff filed the wrongful death action against the Railway, both individually, and in her capacity as the mother and "next friend" of her two minor children. She asserts that her settlement of the third-party action was not binding on the minor children because, at the time of her consummation of the settlement, they were not represented by a guardian *ad litem.*

The trial court concluded that the settling of the third-party claim neither constituted an election of remedies nor terminated plaintiff's or the children's right to compensation benefits. The court also concluded that the settlement with the Railway was not effective to terminate the rights of the children to workmen's compensation be-

808

cause they were not represented by a guardian *ad litem*.

■ Plaintiff successfully argued to the trial court below that a distinction existed between the powers of a guardian *ad litem* and that of a plaintiff acting as next friend of minor children. In New Mexico, a suit may be prosecuted by either a guardian *ad litem* or next friend of minor children; the powers of each in such instance are the same. A "next friend" is a person authorized by law to act or prosecute an action for an infant who has no other regularly appointed guardian. N.M.R.Civ.P. 17(c), N.M. S.A.1978 (1980 Repl.Pamph.), provides that "[i]f an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian *ad litem*." *See also Iriart v. Johnson*, 75 N.M. 745, 411 P.2d 226 (1965). Where a minor is a defendant in an action, the court is under a duty to appoint a guardian *ad litem* to protect the interests of the minor. Sections 38–4–10, 38–4–11, N.M.S.A.1978.

■ In suits involving children, the traditional distinction between a next friend and a guardian *ad litem* is that the former undertakes to prosecute a suit in the name and on behalf of an infant plaintiff, whereas a guardian *ad litem* is appointed by the court to defend a suit against a minor defendant. *Blackwell v. Vance Trucking Company*, 139 F.Supp. 103 (E.D.S.C.1956); *Thompson v. Lassiter*, 246 N.C. 34, 97 S.E.2d 492 (1957); *see* J. Walden, *Civil Procedure in New Mexico*, § 6b (1973); Annot., 33 A.L.R. 105 (1924).

■ The general rule is that a next friend or guardian *ad litem* acting for a minor may negotiate a compromise or settlement, but such compromise or settlement is not binding on the infant in the absence of judicial approval. *Decanay v. Mendoza*, 573 F.2d 1075 (9th Cir.1978); *Ruddock v. Ohls*, 91 Cal.App.3d 271, 154 Cal.Rptr. 87 (1979); *Wallace v. Boston Elevated Ry. Co.*, 194 Mass. 328, 80 N.E. 461 (1907). Similarly, the authority of an attorney representing infants is limited to that possessed by the guardian *ad litem* or next friend. *In Re*

*Wretlind*, 225 Minn. 554, 32 N.W.2d 161 (1948). A party seeking to repudiate a court approved settlement has the burden of proving the agreement was a product of fraud, misrepresentation, overreaching of authority, or mutual mistake. *Marrujo v. Chavez*, 77 N.M. 595, 426 P.2d 199 (1967); *Snyder v. Tompkins*, 20 Wash.App. 167, 579 P.2d 994 (1978).

Although New Mexico does not have a statute requiring court approval of a compromise or settlement made by a next friend on behalf of a minor, the court can require bond of the next friend to assure proper use and accounting of money or property recovered on behalf of the infant. Section 38–4–8, N.M.S.A.1978.

■ A trial court in an action involving minor children has a special obligation to see that they are properly represented, not only by their own representatives, but also by the court itself. *United States v. Reilly*, 385 F.2d 225 (10th Cir.1967); *see also Wasson v. Wasson*, 92 N.M. 162, 584 P.2d 713 (Ct.App.1978). In passing upon settlements dealing with claims or rights of minors, the court must determine whether the approval of a compromise would be in the best interests and welfare of the minor child. *See United States v. Reilly, supra.*

■ The dismissal order, agreed to by Mrs. Garcia and her counsel and approved by the federal court on September 8, 1980, provided in applicable part: "[I]t appearing to the Court that all matters in controversy have been fully settled and compromised between the parties, and the Court being otherwise fully advised in the premises, IT IS HEREBY ORDERED that all claims asserted by plaintiff in the above-captioned lawsuit are dismissed with prejudice."

Under the facts herein, the minor children were represented by their mother acting as their next friend and by counsel and the settlement was judicially approved. It was not necessary under these circumstances to also have a guardian *ad litem* in order that the settlement be binding on plaintiff and her children. Plaintiff herein, acting individually and as next friend of the minor

children, has not directly moved to set aside the settlement in federal court but instead seeks to retain both its benefits and attack the effect of the judgment collaterally. This she cannot do.

Since we have determined that the bringing of the third-party action and the settlement of the wrongful death action by Mrs. Garcia, individually and as next friend of her two minor children, amounted to a bar to their recovery of additional workmen's compensation benefits following the settlement with the Railway, we do not address defendants' other contentions raised on appeal, except as to attorneys fees. Under the facts herein there can be no award of attorneys fees. An award of attorneys fees must be based upon a successful recovery of workmen's compensation or other related benefits. *Phelps Dodge Corp. v. Guerra,* 92 N.M. 47, 582 P.2d 819 (1978); *Montoya v. Anaconda Min. Co.,* 97 N.M. 1, 635 P.2d 1323 (Ct.App.1981); § 52–1–54, N.M.S.A.1978.

The judgment of the trial court is reversed. The case is remanded to the district court to set aside its judgment and enter dismissal of plaintiff's complaint.

IT IS SO ORDERED.

LOPEZ and BIVINS, JJ., concur.