664 P.2d 1014

Diana May BECKHAM, Individually and as Personal Representative of the Estate of Harry Clifton Beckham, Deceased, Plaintiff-Appellant,

v.

ESTATE OF John C. BROWN, Deceased, Basin Motor Company, and Travelers Insurance Companies, Defendants-Appellees,

BASIN MOTOR COMPANY and The Travelers Insurance Companies, Plaintiffs-Appellees,

v.

Diana BECKHAM and Sylvia Roberts, Individually and as next friend of Richard Beckham, Alan Robert Beckham and Carla Jolene Beckham, minors, Defendants-Appellants.

SECURITY TRUST COMPANY, Personal Representative of the Estate of Jerel Reed, Deceased, Plaintiff-Appellee,

v.

ESTATE OF John C. BROWN, Deceased, and Basin Motor Company, Defendants-Appellants.

Nos. 7003, 7037.

Court of Appeals of New Mexico.

April 21, 1983.

Writ of Certiorari Quashed
Aug. 4, 1983.

Ronald F. Horn, Robert H. Clark, Margaret E. Davidson, Keleher & McLeod, P.A., Albuquerque, for appellants in No. 7037 and appellees in No. 7003.

Terry M. Word, Richard E. Ransom P.A., Smith, Ransom & Gilstrap Law Offices, Albuquerque, John P. Viebranz, Reinard & Viebranz, Socorro, for appellee in No. 7037.

Scott M. Curtis, Gallagher, Curtis & Dean, David Pittard, Briones & Pittard, P.A., Farmington, for appellant in No. 7003.

## OPINION

WOOD, Judge.

These interlocutory appeals present the question of whether, on undisputed facts, a salesman's death on a social trip comes within our Workmen's Compensation Act. Cause No. 7003 involves two cases consolidated in the trial court for purposes of appeal. Cause No. 7037 was consolidated with Cause No. 7003 in this Court for the purpose of deciding the substantive issues. We first decide Cause No. 7003, and then apply that decision to Cause No. 7037.

*Cause No. 7003*

We (1) dispose of preliminary matters; (2) state the undisputed facts; (3) discuss arising out of and in the course of employment; and (4) discuss the applicability of the "going and coming" rule. We hold that the wrongful death claim is not barred by the exclusivity provisions of the Workmen's Compensation Act.

*Preliminary Matters*

Harry Clifton Beckham, a car salesman for Basin Motor Company, died in a plane crash. Beckham and other salesmen were being flown from Farmington to Albuquerque to have dinner and attend a University of New Mexico basketball game. The trip was a prize for being a winner in a sales contest. Suit was filed seeking damages for wrongful death or in the alternative for worker's compensation benefits. After extensive discovery both sides moved for summary judgment. The trial court granted summary judgment, ruling that the wrongful death claim was barred by the exclusivity provisions of the Workmen's Compensation Act.

■ If the death comes within the provisions of the Workmen's Compensation Act, that Act provides the exclusive remedy and the claim for damages under the Wrongful Death Act was properly dismissed. Section 52–1–8, N.M.S.A.1978; *Dickson v. Mountain States Mut. Cas. Co.,* 98 N.M. 479, 650 P.2d 1 (1982); *Mountain States Tel. & Tel. Co. v. Montoya,* 91 N.M. 788, 581 P.2d 1283 (1978). The issue is whether the Workmen's Compensation Act applies. The issue is presented on the basis of undisputed facts; the applicability of the Workmen's Compensation Act to those facts is a legal matter. *Edens v. New Mexico Health & Social Services Dept.,* 89 N.M. 60, 547 P.2d 65 (1976).

Because the appeal involves consolidated cases, identification of a party as plaintiff or defendant would not be appropriate. *See* R.Civ.App. 9(p), N.M.S.A., 1978 (1982 Cum.Supp.). We identify the parties on the basis of contentions in this appeal. We recognize that the question of proper parties in the trial court proceedings and the related issue of possible conflicts of interest on the part of attorneys will be affected by our decision. Neither our decision nor the mandate will foreclose the trial court, upon remand, from resolving the question of proper parties and alleged conflicts of interest. *See Genuine Parts Co. v. Garcia,* 92 N.M. 57, 582 P.2d 1270 (1978).

In this appeal (a) Beckham's personal representative, (b) Beckham's widow, and (c) the mother of Beckham's minor children (collectively referred to hereinafter as "Beckham") contend that the Workmen's

Compensation Act is not applicable. This position is taken even though there is a hazard as to the amount of any wrongful death recovery. *See Strickland v. Roosevelt Cty. Rural Elec.,* 99 N.M. 335, 657 P.2d 1184 (Ct.App.1982). Basin Motor Company, which is the employer, and its worker's compensation insurer (collectively referred to hereinafter as "Basin") contend the Workmen's Compensation Act applies. Thus, the employer and the compensation insurer seek to expand the Workmen's Compensation Act to a situation characterized in 1A Larson, Workmen's Compensation Law § 22.00 (1982), as a "comparatively recent development" even though such expansion has some affect on actuarial soundness of compensation coverage, and on premiums for the coverage. *See Martinson v. W–M Ins. Agcy., Inc.,* 606 P.2d 256 (Utah 1980). Basin describes its position as "responsible employee protection" consistent with "a humanitarian and economical system for compensating injured workmen and their families * * * " We are not concerned with the reasons for the positions taken by Beckham and Basin; our concern is limited to the legal correctness of their contentions.

*Undisputed Facts*

The following numbered paragraphs set forth undisputed facts that are material.

1. Basin sells cars. Basin conducts contests for its salesmen because the contests stimulate achievement by the competition among salesmen and this results in more sales by Basin. The more cars sold by a salesman, the more the salesman earns in commissions and bonuses. Contests provide an incentive for something in addition to commissions and bonuses; a prize goes to the contest winners. The prize varies; it may be a meal at Basin's expense; it may be a trip at Basin's expense. Sales contests are so frequent that the contests may be characterized as a regular, common aspect of a salesman's employment by Basin.

2. Basin had a sales contest for the month of February, 1981. The prize was a trip from Farmington to Albuquerque to have dinner and attend a University of New Mexico basketball game. All expense was to be paid by Basin; transportation was to be provided by Basin.

3. Five men were flying from Farmington to Albuquerque on February 28, 1981 in a plane owned by Basin, and piloted by a Basin employee, when the plane crashed and the occupants were killed. All the men were not prize winners. Beckham, however, was aboard the plane as a prize winner.

4. The plane crash did not occur on Basin's premises.

5. Beckham was not being paid any money for his participation in the trip to Albuquerque.

6. No business was to be conducted on the trip. Beckham had no work-related activities to perform on the trip. The only work-related activity of Basin was in providing the trip it had promised.

7. The plane may have departed Farmington prior to the expiration of Basin's usual working hours for salesmen on the day of the trip, a Saturday. However, all occupants of the plane had left the business premises and left their work as salesmen prior to the trip. They met at Beckham's home before going to the airport to board the plane.

8. Prize winners were not required to accept the prize. Two winners declined to go on the trip. Beckham was under no compulsion from Basin to go on the trip.

9. The February 1981 sales contest benefited Basin in that there was an increase in sales. However the prize trip itself benefited Basin only through anticipated improved relations among the salesmen taking the trip.

The briefs present additional undisputed facts, but they are not material. The additional facts are: (a) that a non-employee of Basin was jokingly invited, but did not go on the trip; (b) that a non-winner was substituted when a winner declined the trip; (c) that Basin tendered compensation benefits to Beckham and the other salesmen; (d) that a lump-sum compensation settlement was agreed to in connection with one of the deaths.

These facts are not material, that is, not important to or not influential in resolving the legal question of whether Beckham's participation in the trip subjects *his* death to the exclusivity provisions of the Workmen's Compensation Act. *See State v. Sierra,* 90 N.M. 680, 568 P.2d 206 (Ct.App. 1977); *compare Lent v. Employment Sec. Com'n of State of N.M.,* 99 N.M. 407, 658 P.2d 1134 (Ct.App.1982). Items (a) and (b) have nothing to do with Beckham's participation in the prize trip; Items (c) and (d) would be of importance and would be admissible evidence against Basin if Beckham were claiming compensation and Basin were denying compensation. *See Gonzales v. Stanke-Brown & Associates, Inc.,* 98 N.M. 379, 648 P.2d 1192 (Ct.App.1982); *Southern Union, Etc. v. Wynn Exploration,* 95 N.M. 594, 624 P.2d 536 (Ct.App.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 461 (1982). However, Basin's voluntary tender of compensation after the crash occurred does not aid in resolving the question of whether the trip, while in progress, came within the Workmen's Compensation Act.

*Arising Out Of and In The Course of Employment*

Section 52–1–9, N.M.S.A.1978, states the requirements which, if met, make the Workmen's Compensation Act exclusive. The only requirement in dispute states: "at the time of the accident, the employee is performing service arising out of and in the course of his employment[.]" *See* § 52–1–28, N.M.S.A.1978.

Beckham suggests that the "arising out of" requirement is not met by the undisputed facts. "Arising out of" is not dispositive of this issue. "For an injury to arise out of employment, the injury must have been caused by a risk to which the injured person was subjected in his employment." *Velkovitz v. Penasco Independent Sch. Dist.,* 96 N.M. 577, 633 P.2d 685 (1981); *Losinski v. Corcoran, Barkoff & Stagnone,* 97 N.M. 79, 636 P.2d 898 (Ct.App.1981). If Beckham was at work at the time of the crash, there was a causal connection between the conditions under which the work was being per-

formed (the flight) and the resulting death when the plane crashed. *Gutierrez v. Artesia Public Schools,* 92 N.M. 112, 583 P.2d 476 (Ct.App.1978).

■ The important question is whether, during the aircraft flight, Beckham was "performing service * * * in the course of his employment[.]" Section 52–1–9. Course of employment, historically, has been referred to as relating to the time, place and circumstances under which the accident took place. *Velkovitz, supra.*

Basin asserts that a time, place and circumstance analysis is unnecessary. Citing *Wilson v. Rowan Drilling Co.,* 55 N.M. 81, 227 P.2d 365 (1950), Basin claims either that it had *sent* Beckham on a special mission away from his regular work or that the terms of employment burdened Beckham with a *special duty* incidental to his employment. The facts do not support these arguments. Basin did not send Beckham on the flight; Beckham was not compelled to go on the flight; and he was free to accept or reject the prize. For the same reason, the flight was not a special duty. *See McDonald v. Artesia General Hospital,* 73 N.M. 188, 386 P.2d 708 (1963); *Brown v. Arapahoe Drilling Company,* 70 N.M. 99, 370 P.2d 816 (1962).

Basin also contends that the course of employment issue is disposed of on the basis that Beckham was engaged in activity in furtherance of Basin's interests. Basin's reliance on *Feldhut v. Latham,* 60 N.M. 87, 287 P.2d 615 (1955), is misplaced. *Feldhut* held that two of the three employees "were serving the interests of their employer at the time of the accident at the request of their general foreman." The service being performed by these drilling crew hands was pushing the stalled car of their "tool pusher" (general foreman). *Feldhut* is not applicable to the facts of this case.

Both parties suggest that the course of employment issue should be decided on the basis of a black letter rule stated in Larson, *supra,* § 22.00. This suggestion is made as independent of a time, place and circumstance analysis. Because special rules for particular fact situations have been urged,

*see Gonzales v. Stanke-Brown, supra,* we point out that the Larson rule *is* a time, place and circumstance analysis.

█ The meaning of course of employment has expanded as the employment environment has expanded, *see* Larson § 22.00, but in applying the meaning of course of employment to the facts of a case, an analysis of the facts as to time, place and circumstances remains appropriate. Course of employment activity has been expanded in New Mexico from literal work activity to include personal comfort. However, whether the personal comfort activity was in fact in the course of employment was resolved by a time, place and circumstance analysis. *See Sullivan v. Rainbo Baking Company,* 71 N.M. 9, 375 P.2d 326 (1962); *Whitehurst v. Rainbo Baking Company,* 70 N.M. 468, 374 P.2d 849 (1962). In considering Larson's black letter rule, we are considering time, place and circumstance.

Larson, § 22.00, states:

Recreational or social activities are within the course of employment when

(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

Neither party suggest a "premises" occurrence is involved in this appeal. We refer to Larson's "premises" rule subsequently in discussing the going and coming rule. At this point it is sufficient to caution that New Mexico, by statute, gives a more restrictive effect to going and coming than does Larson. *See* § 52–1–19, N.M.S.A.1978; 1 Larson, Workmen's Compensation Law § 15.42 (1982). Nevertheless, Larson's discussion of "premises" in connection with recreational or social activities is helpful. Larson, § 22.11, states:

When seeking for a link by which to connect an activity with the employment, one has gone a long way as soon as one has placed the activity physically in contact with the employment environment, and even further when one has associated the time of the activity somehow with the employment. This done, the exact nature and purpose of the activity itself does not have to bear the whole load of establishing work connection, and consequently the employment-connection of that nature and purpose does not have to be as conspicuous as it otherwise might. Conversely, if the recreational activity takes place on some distant vacant lot, several hours after the day's work has ceased, some independently convincing association with the employment must be built up to overcome the initial presumption of disassociation with the employment established by the time and place factors.

Under the undisputed facts, an employer "requirement" is not involved in this appeal. Thus, cases relied on by Basin which involve an employment requirement are not applicable. *See Linderman v. Cownie Furs,* 234 Iowa 708, 13 N.W.2d 677 (1944); Larson §§ 22.23 and 22.24.

Both parties contend that the portion of the Larson rule, relevant to this appeal, is the third one. This portion of the rule requires the employer to derive "substantial direct benefit" from the activity; the "direct benefit" approach excludes improvement in employee health and morale common to all kinds of recreation and social life.

Larson, § 22.30, explains:

Controversy is encountered * * * when the benefit asserted is the intangible value of increased worker efficiency and morale. Basically, the trouble with this argument is not that such benefits do not result, but that they result from every game the employee plays whether connected with his work or not. * * * [S]ome arbitrary time and space limitations must circumscribe the area within

which the "benefit" establishes work-connection * * * It can be taken as the majority view that these morale and efficiency benefits are not alone enough to bring recreation within the course of employment.

Basin asserts it received a substantial direct benefit from the sales contest in the form of the increased sale of cars. Basin overlooks the requirement in § 52–1–9 that course of employment must exist "at the time of the accident". Basin benefited from increased car sales during the sales contest; that benefit was received prior to the flight. The benefit to Basin, at the time of the flight, was anticipated improved relations among the salesmen taking the trip. Such is not the substantial direct benefit contemplated by the Larson rule.

The time of the flight was after the salesmen departed their day's work; the salesmen were not on Basin's premises when the crash occurred. Thus, the circumstances of the trip must "bear the whole load of establishing work connection" and those circumstances must be an "independently convincing association with the employment". Larson § 22.11. The circumstances are that Beckham was engaged in a noncompulsory social activity. During the flight, Beckham was not fulfilling any duties of his employment and was not engaged in something incidental to his duties. *Frederick v. Younger Van Lines,* 74 N.M. 320, 393 P.2d 438 (1964).

■ Beckham was not in the course of his employment during the flight. *See Rinehart v. Mossman-Gladden, Inc.,* 77 N.M. 470, 423 P.2d 991 (1967); *Olguin v. Thygesen,* 47 N.M. 377, 143 P.2d 585 (1943).

*Going and Coming*

Basin contends that even if Beckham was not in the course of his employment, Beckham's exclusive remedy is, nevertheless, under the Workmen's Compensation Act. Basin points out that Beckham's complaint alleges that Beckham's death resulted from Basin's negligence. In light of this allegation of negligence, Basin asserts that our statutory going and coming provision brings the death within the Workmen's Compensation Act. *Mountain States Tel. & Tel. Co. v. Montoya, supra.*

Section 52–1–19, N.M.S.A.1978, provides that injury by accident arising out of and in the course of employment, "shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which is not the employer's negligence."

Even if we assume "arising out of" to be present, we have held that Beckham's death was not "in the course of" his employment. Basin points out that *Mountain States Tel. & Tel. Co. v. Montoya, supra,* held: "This fact situation is exactly what was contemplated" by § 52–1–19; that Beckham "was provided with a compensable claim * * * by reason of the alleged negligence of his employer."

Basin's claim is a sweeping one. It is that so long as there is a sufficient work connection to meet the "arising out of" requirement, any worker injured by the employer's negligence is limited to compensation. Basin would eliminate any consideration of time or place from the statutory phrase "after leaving" the duties of employment. Basin's contention is contrary to the discussion in Larson and is contrary to New Mexico decisions.

1 Larson, § 15.00, defines the going and coming rule in terms of *going to and from work.* Larson, § 15.11, states that the going and coming rule provides compensation for a worker *injured on the employer's premises while going to or from work.* Larson, §§ 15.12 through 15.15, discusses exceptions to the premises limitation—special hazards, travel between two points of the premises, the range of the risk. These exceptions extend compensation to injuries off the premises; however, the exceptions do not extend the going and coming rule to situations where there is no going to or from work.

Section 52–1–19 differs from Larson in that compensation is provided in going and coming situations only where there is em-

ployer negligence. Section 52–1–19 does not differ from Larson as to the travel which is subject to the going and coming rule. The travel must have been in going to or returning from work, the going and coming rule does not apply to all travel after leaving the duties of employment.

Most of our going and coming decisions involve the fact that the worker was going to or coming from work. Examples are: *Galles Chevrolet Co. v. Chaney,* 92 N.M. 618, 593 P.2d 59 (1979); *McDonald v. Artesia General Hospital, supra; Caviness v. Driscoll Const. Co.,* 39 N.M. 441, 49 P.2d 251 (1935); *Gonzales v. N.M. State Highway Dept.,* 97 N.M. 98, 637 P.2d 48 (Ct.App. 1981); *Romero v. S.S. Kresge Co.,* 95 N.M. 484, 623 P.2d 998 (Ct.App.1981); *Hayes v. Ampex Corporation,* 85 N.M. 444, 512 P.2d 1280 (Ct.App.1973). *Mountain States Tel. & Tel. Co. v. Montoya, supra,* on which Basin relies, is within this category of cases. These decisions do not aid Basin because the decisions did not consider whether § 52–1–19 applies to travel not involving going to or coming from work.

*Cuellar v. American Employers' Ins. Co. of Boston, Mass.,* 36 N.M. 141, 9 P.2d 685 (1932), considered whether the statutory language, "after leaving" the duties of the employment, has a meaning as broad as Basin contends. The special concurrence of Justice Watson illustrates the problem:

The word "after" may include all subsequent time, and even eternity; but, obviously, it does not. I venture to say that no court would hold that it could survive the termination of the contract of employment. Manifestly, the statute contemplates that the situation "after leaving his duties" shall be interrupted each day.

The majority opinion in *Cuellar* pointed out that the "peculiar expression of our statute" must be construed and that the construction should be the "least departure" from the statutory requirement that compensation is paid for injuries arising out of and in the course of employment. The majority opinion then notes the "general rule" that "no compensation is recoverable by an employee who is on his way *to or from work * * * *"* (Emphasis added.) The majority then employ the factors of time, place and circumstance to determine whether a worker was injured while going to or from work. The majority limited the going and coming rule to travel to and from work.

In *Olguin v. Thygesen, supra,* the plaintiff was employed as a "flare man" by a contractor engaged in the construction and repair of a highway. Plaintiff, while driving over the highway covered by the contract, was injured in a collision with an unlighted road roller parked on the traveled portion of the highway. The collision occurred at night. At the time of the accident plaintiff was taking another employee to work. "The accident occurred while plaintiff was driving on his own business and in no way connected with the business of the company." *Olguin* held that our going and coming rule was not applicable; "plaintiff was not injured 'while on his way to assume * * * or after leaving such duties' by any negligence of the employer." *Olguin* held "the suit was properly brought as a common law action for damages for negligence."

Larson, *Cuellar* and *Olguin* are consistent. *See also Hernandez v. Home Educ. Livelihood Program,* 98 N.M. 125, 645 P.2d 1381 (Ct.App.1982). Our going and coming rule does not involve all travel after leaving the duties of employment. The travel must be in going to or in coming from work. Beckham had gone home from work. He went from his home to the airport. The flight was not to or from work. The going and coming rule is not applicable; § 52–1–19 did not bring Beckham's death within the exclusivity provisions of the Workmen's Compensation Act.

The summary judgment dismissing the wrongful death claim is reversed; the cause is remanded with instructions to proceed with the wrongful death claim and to dismiss the alternative claim for compensation.

No certification as to costs has been included in the record on appeal. The filing fee in this Court was paid by the parties

identified as "Beckham". This fee is to be recovered from Basin. In addition, Basin is to pay for the cost of the record on appeal, either by reimbursement to Beckham or directly to the clerk of the district court. *Ryan v. Bruenger M. Trucking*, 100 N.M. 15, 665 P.2d 277 (Ct.App.) (1983).

*Cause No. 7037*

Jerel Reed, also a salesman for Basin, was aboard the plane when it crashed. Security Trust Company, as Reed's personal representative, filed suit seeking damages for wrongful death. The defendants in Security's suit moved for summary judgment on the basis that the exclusive remedy for Reed's death was under the Workmen's Compensation Act. This motion was denied. Security moved for partial summary judgment eliminating the defense that the Workmen's Compensation Act was exclusive. This motion was granted.

The undisputed facts in Cause No. 7003 apply to this case, with these exceptions:

1. The trip was a prize to the top five salesmen.

2. Reed was not in the top five.

3. Because two of the top five declined to go, Reed was offered a place on the trip. Reed accepted the offer.

4. Reed went to the airport from Beckham's home.

Our reasoning in Cause No. 7003 applies. Reed was not in the course of employment and the going and coming rule is not applicable.

The trial court's order is to the effect that Security Trust Company may proceed with the wrongful death claim. That order is affirmed.

The clerk's record indicates that defendants have paid the appellate costs. No recovery of costs is awarded.

IT IS SO ORDERED.

LOPEZ and BIVINS, JJ., concur.