**PILAK, Plaintiff-Appellee, v. YOUNGSTOWN SHEET & TUBE COMPANY, and YOUNG, Admr. Bureau of Workmen's Compensation, Defendants-Appellants.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3981. Decided October 8, 1958.

358

Beil, Robinson & Van Brocklin, Youngstown, for plaintiff-appellee.

Paul J. Fleming, of Manchester, Bennett, Powers & Ullman, Youngstown, for defendant-appellant, Youngstown Sheet & Tube Company.

**OPINION**

Per CURIAM.

Defendant corporation, a self insurer under the Workmen's Compensation Law of Ohio, appeals on questions of law from a judgment of the court of common pleas entered upon a finding of a judge thereof, without a jury, for plaintiff, the surviving spouse of Gregory Pilak in her appeal thereto from the ruling of the Industrial Commission of Ohio denying her the right to participate in the Workmen's Compensation Fund of Ohio for the reason that "the proof of record does not establish that decedent's death was the result of an injury received in the course of and arising out of his employment."

By assigned grounds of error defendant contends that "the trial court erred in overruling defendant's motion for judgment" and "for a new trial."

The evidence supports the following terse statement of fact lifted from defendant's brief:—

"Gregory Pilak, the deceased, had been employed by the defendant

company as a 'clean-up man' in the machine shop, and on January 24, 1955, at about 10:00 P. M. was found in an unconscious condition on a roadway skirting the north edge of the company's plant, at a point underneath a ramp or bridge about one-third of a mile distant from his work station; he was taken to Youngstown Hospital where he died without regaining consciousness twelve days later due to Encephalomalacis, shock, hermorrhage and fractured right femur.

"About an hour prior to discovery of Pilak in an unconscious condition, a tool room attendant saw him pass his station of employment and testified his eye glasses were askew and he had what appeared to be bruise on the right side of his face; he was walking toward the exit of the machine shop. Although there were many employees in the machine shop no one, other than the tool room attendant, noticed anything unusual about Pilak's appearance that day; no one witnessed any accidental happening to Pilak.

"Pilak's job as clean-up man was not hazardous; it consisted of sweeping the floor and dumping the refuse in a pit outside the building; there is no evidence that he fell in the pit though the chain at the dumping point was unfastened."

The tool room attendant observed plaintiff about 9:00 P. M. with black marks and a knot on the right side of his face as he walked past him from the rear of the machine shop to the front.

The decedent on the day he was found unconscious in the plant of his employer was working on the shift from three o'clock P. M. to eleven o'clock P. M., and he was found in such unconscious state with the described injuries from which he died while he was still on the premises of the employer, lying at the foot of an incline between his place of employment and the company's hospital.

Defendant argues:—

"However, there is no evidence of the cause of the black marks and knot or the nature of them. There is no basis on the evidence produced for an inference that whatever Pilak had on his face was an injury sustained in the course of and arising out of his employment, any more than an inference would be justified that the marks were received in a fight. But even if it should be conceded that the marks on his face was an injury and draw the inference that injury was sustained in the course of and arising out of his employment, there is absolutely no evidence that his death resulted from this injury unless we indulge in a further inference that the injury resulted in his death. In other words, to arrive at a verdict for the plaintiff in this case the trial court necessarily had to base an inference on an inference, which, of course, is not permitted under the law of Ohio."

It is true that there is no direct evidence as to the manner in which the deceased received the injuries which were evident when he was found on the company's premises, one of which injuries was a fractured skull.

The law does not favor an assumption of suicide. The evidence does disclose that the decedent died as the result of the fractured skull and perhaps other of the injuries existing at the time he was found unconscious on the premises of the employer.

There is no evidence from which a reasonable inference could be drawn other than that the injuries were received by decedent in the course of and arising out of his employment.

It is not important just the manner in which such injuries were brought about so long as they were occasioned in the course of and arising out of his employment. His services for the day had not ended and would not have for another hour. There is some direct evidence that as he proceeded to leave the immediate place where the duties were to be performed he was in an injured condition and his glasses were askew. There is further evidence that the chain guarding the pit wherein the refuse from the plant was required to be deposited had been unfastened and the wheelbarrow which was used for conveying refuse to the pit was found at that identical place.

It was not necessary for the judge, sitting as the jury in this case, to base an inference upon an inference, but could determine from all the circumstances shown by the evidence whether the injuries with which plaintiff was suffering while on defendant's premises arose in the course of and out of his employment.

We think the judge, sitting as the jury, made no mistake in finding for the plaintiff in this respect.

While it is true that decedent was found in an unconscious condition about three-quarters of a mile from the place where he ordinarily deposited refuse from the plant, nevertheless he was still upon the premises of his employer, proceeding in the direction of the company hospital, and there is no evidence that he had been engaged in a fight or had been away from his place of employment.

The fact that no one saw his injuries inflicted would not necessarily prevent recovery in this case. The judge, sitting as the jury could have and did properly find from all the circumstances shown by the evidence that the decedent died from injuries which he received in the course of and arising out of his employment.

This is not a case in which a jury was required to guess as to whether decedent's injuries grew out of and in the course of his employment or otherwise, since there is no evidence indicating that decedent received any injuries otherwise than such as he was suffering while still on the premises of the employer while proceeding in the direction of the defendant's first aid dispensary, and there is no evidence that such injuries were purposely self-inflicted.

Defendant further argues:—

"Plaintiff was found three-tenths of a mile from his regular place of employment at a place where he had no conceivable business in connection with his employment as a 'clean-up man.' When found he had extensive and serious injuries, including a fractured skull and a comminuted fracture of the right femur; he was unconscious and remained so until death twelve days later. There is absolutely no evidence of how these injuries were sustained. There is positive evidence that he did not have these injuries when observed by Bobbitt (tool room attendant). And furthermore, it is quite clear from the medical testimony and the hospital records that it was these injuries which caused

plaintiff's death. Investigation made by the company and the Youngstown Crime Laboratory indicated he was not struck by a vehicle but there was some evidence he might have jumped or fallen from the ramp bridge under which he was found."

Sec. 4123.54 R. C., a part of the Workmen's Compensation Act, provides for compensation for a workman's injury or death "in the course of and arising out of his employment." This statute requires that a death claim, to be compensable, must be based upon an accidental injury which was the direct and proximate cause of the death. And, to be compensable, the injury must "arise out of" the employment, that is the injury must have its origin in a risk connected with the employment. McNees v. Cincinnati Street Ry. Co., 152 Oh St 269.

Defendant erroneously contends the evidence in this case does not meet the above specified requirement. Plaintiff has met the burden of proof.

In the case of Sobolovitz v. The Lubric Oil Co., 107 Oh St 204, the second paragraph of the syllabus reads:—

"An inference of fact cannot be predicated upon another inference, but must be predicated upon a fact supported by evidence."

See also Hoppe v. Industrial Commission, 137 Oh St 367.

Plaintiff argues upon authority of Hurt v. Charles J. Rogers Transportation Co., 164 Oh St 329, that:—

"It is permissible for a jury to draw several conclusions or presumptions of fact from the same set of facts and equally permissible for a jury to use a series of facts or circumstances as a basis for ultimate findings or inferences.

"The weight of an inference as well as the weight of the explanation offered to meet the inference is for the determination of the trier of the facts, unless the explanation is such that reasonable minds could not reach different conclusions as to its preponderating value when measured against the weight of the circumstantial evidence."

The question of suicide was injected in the case. Plaintiff argues rightly that this question is disposed of by the case of Provident Life & Accident Ins. Co. v. Prieto, 83 S. W. (2d) 251, where at page 267 the court states:—

"Where a death by external and violent means is shown, and there is no proof as to how it was caused, or the attendant circumstances leave the question doubtful, or the proof concerning them is conflicting or not inconsistent with accident, the law presumes an accidental death, and the burden of proof, in its secondary sense, is cast upon the defendant, and requires it to prove by a fair preponderance of the evidence that death was caused by suicide.

"This presumption is not displaced by proof of circumstances which merely tend in a greater or less degree to show suicide, but in such case it is a question for the jury whether they overturn the presumption.

"Where there is no proof indicating either accident or suicide in case of a death by external violence, or where the proof is equally balanced, or is conflicting, this presumption comes to the aid of the plaintiff, in making out his or her case."

362

Having set forth and considered fully the contentions and arguments of counsel, oral and by brief, the evidence and the law and all aspects of the case under review, we conclude that the judgment of the trial court must be and hereby is affirmed.

NICHOLS, PJ, GRIFFITH and PHILLIPS, JJ, concur.