643 P.2d 622

**Rafael P. SENA, Plaintiff-Appellee,**

v.

**CONTINENTAL CASUALTY CO., and Creamland Dairies, Inc., Defendants-Appellants.**

No. 5292.

Court of Appeals of New Mexico.

March 25, 1982.

Nathan H. Mann, Jerrald J. Roehl & Associates, Albuquerque, for defendants-appellants.

Narciso Garcia, Jr., Toulouse, Toulouse & Garcia, Albuquerque, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

The defendants appeal a judgment in a workmen's compensation case awarding total and permanent disability and other benefits to the plaintiff. We affirm.

There are two issues on this appeal: 1. Whether the plaintiff's accidental injuries arose out of and in the course of his employment; and 2. Attorney's fees.

The trial court entered 38 Findings of Fact regarding the issue of whether the accidental injuries arose out of and in the course of his employment. Only one finding, No. 33, has been challenged. The unchallenged findings show the following facts.

Rafael Sena began working for Creamland Dairies, Inc., in 1957. Creamland is located at Third and McKnight in Albuquerque. On Thanksgiving morning, November 22, 1979, Sena drove his pickup truck to work and parked it on the street beside the Creamland premises. He locked the pickup, removed the keys, and went in to work. He punched in at 4:30 a. m., and began carrying out his duties as a milk receiver, which consisted of emptying tankers of milk. He had hooked up hoses to the tanker and turned on the pump to pump the milk out of the tanker. At 5:15 a. m., he made a notation on his log sheet. He then climbed a ladder up onto the top of the tanker, checked the level of the milk, and started to climb down. That is the last thing Sena remembers until he woke up in the hospital several days later.

At 5:29 a. m., police officer Emsing was dispatched to Third and Lomas. This is about twelve blocks from Creamland. When he arrived, an ambulance and rescue squad were already there. Sena was lying in the road on Third Street about 230 feet south of Lomas, severely injured.

At approximately 5:15 a. m., police officer Steele observed at Copper, a pickup truck traveling south on Third Street at a high rate of speed with no lights on. He pursued the truck for some distance. Finally, the driver abandoned the truck and ran off. He was never caught. The pickup belonged to Sena, and was the same truck he had driven to work that morning.

The trial court entered 15 findings regarding attorneys fees. Only 4 are challenged, Nos. 48, 49, 51, and 54.

39. Plaintiff is entitled to a reasonable attorney fee.

40. The Defendants refused to pay any Workmen's Compensation to the Plaintiff for the injuries he received on November 22, 1979.

41. The Defendants never offered any settlement to the plaintiff or his attorneys.

42. The Defendants contested all issues until immediately before trial and [sic] which time they stipulated that the plaintiff was permanently and totally disabled.

43. After the trial on the merits, the Court found totally in the plaintiff's favor awarding him back benefits, future benefits, medical and rehabilitation expenses.

44. The issue that was eventually tried was whether the Plaintiff was within the scope and course of his employment when he was injured.

45. The factual and legal issues involved in this case were: Where plaintiff's injuries occurred, whether he fell from his pickup or whether he was struck by an object in the eye, whether his job was a "high-risk" one because of the area of town he worked in, whether the presumption in this case should have been

that plaintiff's injuries arose out of his employment and whether, even if plaintiff had left defendant's premises voluntarily, if it constituted such a minor deviation as to be compensable.

46. The attorney who did the majority of work on this case showed excellent ability and skill and presented plaintiff's case in a professional manner and has an outstanding reputation in the community for an attorney with his four years experience.

47. The plaintiff himself had no money and was, in fact, destitute as a result of his injury and could not have afforded an attorney, nor the costs of litigation.

48. Narciso Garcia, Jr., one of the plaintiff's attorneys put in a minimum of eighty-five (85) hours, while the other attorneys in his firm also worked on the case.

49. A reasonable estimate of the time spent on this case by plaintiff's attorneys would be one-hundred thirty (130) hours.

50. The hourly rate for attorneys with the years of experience of the attorneys who worked on this case range from $50.00 to $125.00 an hour.

51. The hourly rate normally charged by an attorney with Mr. Garcia's experience would be between $70.00 to $75.00 an hour.

52. Plaintiff's case was an "all or nothing" type situation and if plaintiff had not been successful, his attorneys would not have been compensated for their work.

53. The amount of benefits paid to plaintiff over the 600 maximum weeks is in excess of $100,000.00.

54. A reasonable attorney fee is Twelve Thousand Five Hundred and no/100 Dollars ($12,500.00).

*Arising out of and in the course of employment.*

 The Workmen's Compensation Act requires that an accidental injury arise out of and in the course of the workman's employment in order to be compensable. Section 52–1–9 and § 52–1–28, N.M.S.A.1978.

An injury arises out of the employment when it is "caused by a risk to which the worker is subjected in the employment." *Losinski v. Corcoran, Barkoff & Stagnone*, 97 N.M. 79, 636 P.2d 898 (Ct.App.1981). Whether an injury occurs in the course of employment "relates to the time, place and circumstances under which the accident takes place." *Velkovitz v. Penasco Independent Sch. Dist.*, 96 N.M. 577, 633 P.2d 685 (1981).

 The question of compensability of an accidental injury under the New Mexico Workmen's Compensation Act is a matter of law to be decided by the court from the facts. *Tafoya v. Kermac Nuclear Fuels Corp.*, 71 N.M. 157, 376 P.2d 576 (1962); *Burton v. Crawford and Company*, 89 N.M. 436, 553 P.2d 716 (Ct.App.1976). The defendants challenge the judgment of the trial court on the grounds that findings No. 32 and 33 are inconsistent and that they do not support the conclusions arrived at by the trial court. Findings Nos. 32 and 33 read as follows:

32. The events that transpired from 5:15 a. m. to 5:29 are unexplained.

33. Plaintiff suffered an accidental injury arising out of and in the course of his employment.

Defendants also contend that finding No. 33 is not supported by substantial evidence. Our duty in this appeal is to determine whether the challenged findings are supported by substantial evidence and whether all of the findings support the conclusions reached by the trial court. This court will not disturb any of the trial court's findings when they are supported by substantial evidence. *Wilson v. Richardson Ford Sales, Inc.*, N.M., 638 P.2d 1071 (1981).

The defendants argue that finding No. 32 has no factual basis in the evidence and that the trial court could not conclude that the accident arose out of and in the course of his employment. This case is not the ordinary workman compensation case. We are unable to find an identical case in the State of New Mexico. However, our appellate courts have decided cases which

we can rationally and logically apply to this case. The New Mexico Workmen's Compensation Act must be liberally construed and reasonable doubts resolved in favor of of the workman. *Edens v. New Mexico Health & Social Services Dept.*, 89 N.M. 60, 547 P.2d 65 (1976). This rule of liberal interpretation compels this court to find a solution to the issues before us.

First, we examine New Mexico cases which have dealt with unexplained events in death cases. In *Campbell v. Schwers-Campbell, Inc.*, 59 N.M. 385, 285 P.2d 497 (1955), the decedent was the vice-president of a company, a shoe business. He had gone to Roswell to install a new manager at the Roswell store. This task ended at midnight October 27, 1952. There was no evidence whatsoever of his whereabouts from that time up to 1:30 p. m., October 28th. At such time his body was discovered close to his overturned car, 18 miles south of his motel in Roswell. The items in his car showed no work related activity. There was no evidence whatever upon which to rest an inference that the accident occurred at a place where his duties required him to be or where he might properly have been in the performance of such duties. The jury verdict in plaintiff's favor was reversed because there was no proof upon which to base an inference. The Supreme Court, quoting from *Clower v. Grossman*, 55 N.M. 546, 549, 237 P.2d 353 (1951), said:

The burden of proof is always on the plaintiff to show that the employee sustained an accidental injury in the course of and arising out of his employment. However, it is not necessary that the proof in this respect be direct but may be shown by circumstantial evidence alone.

On sufficiency of the evidence to sustain a verdict, the court said:

An inference is not a supposition or a conjecture, but is a logical deduction from facts proved * * * * and guess work is not a substitute therefor.

*Stambaugh v. Hayes*, 44 N.M. 443, 103 P.2d 640, 645 (1940).

In *Ensley v. Grace*, 76 N.M. 691, 417 P.2d 885 (1966), the employee died. It was contended that the death occurred in the course of his employment but was argued that it did not arise out of his employment. The employee was killed by a co-employee while at work at her usual place of employment. Our Supreme Court in the process of holding that a rebuttable presumption was created that the death arose out of the employment, discussed three types of risks, those associated with the employment, those personal to the claimant and those which were neutral. As to neutral risks the Court quoted from 1 Larson, Workmen's Compensation Law (1978):

[T]he view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance.

Regarding the concept of unexplained events the court said, at 76 N.M. 696, 417 P.2d 885:

Thus, it can be seen that the occurrence having transpired under circumstances such as are here present, authority and reason support the application of a rebuttable presumption that death arose out of the employment. When the reason or cause for the accident is not explained, and it occurred during the time decedent was at work, the fundamental theory underlying our workmen's compensation law favors recovery rather than denial of compensation.

Now, we refer to cases from other jurisdictions. In *American Airmotive Corp. v. Moore*, 62 So.2d 37 (Fla.1952), the employee had been entertaining a client of the business, dropped off the client, and drove the company car to get gasoline at the pump on the employer's premises. His actions at the company premises were observed by plainclothes policemen in an unmarked car, who were parked near the gates of the employer's grounds. Claimant's car approached the area at a high rate of speed, slowed down, and then rapidly sped away from the employer's premises and away from his home. About a mile further on, the employee missed a curve and was killed in the resulting accident. There was no explana-

tion for the employee's actions, but the Florida Supreme Court affirmed an award of workmen's compensation benefits, holding that there were "facts upon which it could be reasonably inferred that the deceased was engaged in the employer's business at the time of his death."

In *Western Grain & Sugar Products Co. v. Pillsbury*, 173 Cal. 135, 159 P. 423 (1916), the employee was a nightwatchman, who disappeared from work and was never seen again. There was some evidence of foul play, although not a whole lot. The California Supreme Court affirmed the award of workmen's compensation to the worker's personal representative, even though no body was ever found and no satisfactory explanation was given for the disappearance. In *Chelden Radio Cab Co. v. Workmen's Comp. App. Bd.*, 10 Pa.Commw.Ct. 478, 310 A.2d 726 (1973), the court affirmed a finding that the deceased employee was within the course of employment at the time of his death. The employee was a cab driver. He stopped at a service station to visit friends, drove to a restaurant and got coffee and doughnuts for himself and his friends, and then was found within the hour some blocks away in his cab shot to death. The court found that these facts were sufficient, as a matter of law, to support the finding that the employee was within the course of his employment. In *Melbourn Airways College, Inc. v. Thompson*, 190 So.2d 305 (Fla.1966), decedent was a chartered pilot who disappeared on a flight from Florida to the Bahamas. No trace was ever found of the plane. The court held that in the absence of evidence showing a deviation from the employment, an award of death benefits was not error.

In *Pilack v. Youngstown Sheet & Tube Company*, 162 N.E.2d 201, (Ohio App.1958), the deceased clean-up man was found dead several blocks from his place of employment. The death was held compensable. The workman was found dead on the premises on a roadway at a point which was about one-third of a mile distant from his work station. The man had sustained bruises, a fractured skull and a fractured femur. The Court of Appeals of Ohio upheld the lower court's determination that the claim was compensable. The court said at 162 N.E.2d at 203:

> The fact that no one saw his injuries inflicted would not necessarily prevent recovery in this case. The judge sitting as the jury could have and did properly find from all the circumstances shown by the evidence, that the decedent died from injuries which he received in the course of and arising out of his employment.

The court in *Pilack, supra*, quoted from *Provident Life & Accident Ins. Co. v. Prieto*, 169 Tenn. 124, 83 S.W.2d 251, 267, as follows:

> Where a death by external and violent means is shown, and there is no proof as to how it was caused, or the attendant circumstances leave the question doubtful, or the proof concerning them is conflicting or not inconsistent with accident, the law presumes an accidental death, and the burden of proof, in its secondary sense, is cast on the defendant, and requires it to prove by a fair preponderance of the evidence that death was caused by suicide.

> \* \* \* \* \* \*

> Where there is no proof indicating either accident or suicide in case of a death by external violence, or where the proof is equally balanced, or is conflicting, this presumption comes to the aid of the plaintiff, in making out his or her case.

At 1 Larson's Workmen's Compensation Law § 10.32(c) (1978) on unexplained deaths involving the course of employment issue, Larson states:

> If there are circumstances sufficient to raise an inference that the employee met with an accident on the job, the failure to find any trace of the decedent is not necessarily fatal to the claim.

In § 10.32(c), Larson discusses the concept of "a wide area of uncertainty about the decedent's movements between the last time he was seen and discovery of his death":

> It is not, of course, necessary that the decedent be discovered at this immediate

post of duty since * * * the course of employment embraces not only actual performance of the work but any reasonably incidental acts. And so when employees have been found dead in slightly improbable locations awards have been permitted as long as there was some reasonable explanation * * * *

■ We believe that under the cases in New Mexico and the other jurisdictions that are consistent, that when there is a reasonable basis from which the court can draw some work connected activity and risk, that it can do so as a matter of law. In other words, if there are any facts and circumstances sufficient to raise a reasonable inference that the employee met an accident on the job the failure to find positive evidence is not fatal to the claim. *Melbourne Airways & Air College, Inc. v. Thompson, supra.*

■ We conclude that there was competent evidence from which the trial court could draw an inference or inferences that the employee plaintiff was assaulted at work, kidnapped and taken to the place where he was found unconscious at 5:29 a. m. There was evidence by Dr. Spingola, by deposition, that Mr. Sena had a laceration around his eye that had to come from some blunt force hitting him in the face. He testified that the force behind someone swinging a baseball bat could cause such an injury and a punch by somebody with a sharp ring could do the same damage. He testified that it was his opinion based upon a reasonable medical probability. There was testimony that human blood was found on the outside of the back window of the pickup, and that this blood had not been there prior to November 22, 1979.

Regarding the risk to which plaintiff was subjected, there was the following testimony. The plaintiff punched his time card at 4:40 a. m.; the area where he worked was covered on top and open on two sides. He was easily subject to attack. The plant location was in a bad part of town and susceptible to crime. Uninvited persons and drunks, on occasion, walked into the place and would have to be chased out and there were no security guards working on that date.

The plaintiff was found only twelve blocks away from his work and in an unconscious condition, and only within 14 minutes after he had made a notation on his work log. We believe that under the theory of "no wide area of uncertainty" regarding the place of employment at the time of injury, the trial court could reasonably infer the plaintiff's injuries arose out of and in the course of his employment. The defendants argue that their theory of what happened should be taken as true. What defendants contend is that the trial court should have accepted the inferences that the defendants theorized. The time between 5:15 and 5:29 presents an area from which reasonable inferences could be drawn by the trial court from the undisputed facts set out hereinbefore. The trial court chose to disregard defendants' theoretical inferences and to make its own findings. The trial court found that the accident arose out of and in the course of decedent's employment. We believe that the trial court's findings are supported by substantial evidence and reasonable inferences which could be drawn and that the findings support the conclusions.

*Attorney's fees.*

■ The trial court entered 15 findings requested and challenged only 4: Nos. 48, 49, 51 and 54.

48. Narciso Garcia, Jr., one of the plaintiff's attorneys put in a minimum of eighty-five (85) hours, while the other attorneys in his firm also worked on the case.

49. A reasonable estimate of the time spent on this case by plaintiff's attorneys would be one-hundred thirty (130) hours.

51. The hourly rate normally charged by an attorney with Mr. Garcia's experience would be between $70.00 to $75.00 an hour.

54. A reasonable attorney fee is Twelve Thousand Five Hundred and no/100 Dollars ($12,500.00).

Defendants' argument is based on an alleged absence of evidence regarding time and effort spent by plaintiff's counsel. They argue that there was no evidence to support an award of attorney's fees in the amount of $12,000.00.

The matter of attorney's fees awarded by trial courts in workmen's compensation cases has been on appeal in our courts many times. *Fryar v. Johnsen*, 93 N.M. 485, 487, 601 P.2d 718, 720 (1979), laid down all the necessary factors: (1) The relative success of the workman in the court proceedings; (2) The extent to which the issues were contested; (3) The complexity of the issues; (4) The ability, standing, skill and experience of the attorney; (5) The rise in the cost of living; (6) The time and effort expended by the attorney in the particular case; (7) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly; (8) The fee customarily charged in the locality for similar services; (9) The amount involved and the results obtained; (10) The time limitations imposed by the client or by the circumstances; and (11) The experience, reputation, and ability of the lawyer or lawyers performing the services. In the case at bar, Peter Johnstone, who was plaintiff's expert witness, testified that $15,000.00 was a reasonable fee. He used the document referred to as an itemization which appears in the record and was marked as Exhibit No. 1. The trial court allowed the document to be filed as a pleading. We believe that the itemization was competent basis for the expert witness to express his opinion about attorney's fees. Both the expert's opinion and the itemization were sufficient evidentiary support from which the trial court made the necessary findings and conclusions.

The defendants contend that the number of hours would only add to about $6,500.00 attorney fees. Time spent and a usual hourly rate are only two factors to be considered. *Fryar, supra.* They contend that finding No. 50 and 53 lack evidentiary support.

50. The hourly rate for attorneys with the years of experience of the attorneys who worked on this case range from $50.00 to $125.00 an hour.

53. The amount of benefits paid to plaintiff over the 600 maximum weeks is in excess of $100,000.00.

The defendants finally argue that finding No. 53 is wrong. With this we agree. The total benefits over 600 weeks would only be $73,400.00. However, we deem this error not to be fatal to the court's findings and conclusions regarding the award of attorney's fees.

To follow the defendants' contention on attorney's fees would lead to absurd results. This would probably only encourage claimants' attorneys to spend more time in preparation for proof of their own fees than proof of their clients' injuries. This procedure is inconsistent with the intent and purposes of the Workmen's Compensation Act. This court will not hobble our interpretation of *Fryar* and our interpretation of our Workmen's Compensation Act with the requirement that the claimant's counsel must account for every second, every minute, and for every hour expended in preparation and trial of this case, before we accept the trial court's determination on attorney's fees. We believe that *Fryar* only requires a reasonable accounting of time spent; nothing more is required. We conclude that the trial court did not err in its findings and conclusions regarding attorney's fees.

The judgment of the trial court is affirmed. Plaintiff is awarded $1500.00 for his appellate attorney's fees.

IT IS SO ORDERED.

WALTERS, C. J., and NEAL, J., concur.