732 P.2d 1382

Thomas Joe NEEL, Plaintiff-Appellee,

v.

STATE DISTRIBUTORS, INC. and Mission Insurance Company, Defendants-Appellants.

No. 8584.

Court of Appeals of New Mexico.

Oct. 16, 1986.

Certiorari Quashed Feb. 16, 1987.

Howard R. Thomas, Matthew P. Holt, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for defendants-appellants.

John A. Bannerman, Sasha Siemel, Sutin, Thayer & Browne, P.C., Albuquerque, for plaintiff-appellee.

## OPINION

HENDLEY, Chief Judge.

Defendants appeal plaintiff's worker's compensation award. Plaintiff was injured from a self-inflicted gunshot wound to the face. Defendants contend that the injury did not arise out of the scope of employment because (1) the gun was not required by plaintiff's employment as an officer of the liquor business; (2) when the gun went off plaintiff was not doing anything related to his employment; and (3) even if plaintiff had been cleaning the gun, he had finished by the time it went off. Defendants also contend that the event was not an accident but was an attempted suicide. This is essentially a case in which defendants are arguing a lack of substantial evidence. We affirm.

Plaintiff was vice-president and general manager of State Distributors, Inc., a liquor wholesaler. On April 27, 1983, plaintiff arrived at his office approximately forty minutes early. Phyllis A. Gutierrez, the controller, was at work and greeted him. Thereafter, plaintiff entered his office. A few minutes later, Gutierrez stated that she heard a loud noise and found plaintiff lying on the floor near his desk bleeding from a gunshot wound. A pistol was in his hand.

Plaintiff was taken to a local hospital and treated. Diagnosis of the injury revealed that the pistol had been discharged under plaintiff's chin. The bullet had struck the jawbone, traveled through his palate, tongue, left eye, and into the front portion of his brain. The treating physicians noted that the bullet's entry left a "stellate" pattern or a star-shaped tear, and that such a wound is indicative that the barrel of the gun was in contact with the skin at the time the pistol was discharged. However, the evidence also showed multiple stellate wounds in both the roof and floor of the mouth.

Following surgery, plaintiff was placed in intensive care. He was combative and had to be restrained. Plaintiff was fed through a tube. The first night plaintiff pulled out the tube. Dr. Tyler W. Payton, a psychiatrist, and Dr. Reid K. Hester, a psychologist, who had both treated plaintiff, testified that they had questioned him about whether he had deliberately attempted to take his own life and that plaintiff nodded affirmatively. Dr. Payton saw plaintiff two weeks after the shooting. He testified he had stated to plaintiff that it must be horrible to be so depressed that one would try to take his own life. Plaintiff, unable to talk, nodded. Dr. Hester testified that he had also inquired of the plaintiff whether the shooting was deliberate. At that time, plaintiff was unable to speak and responded by nodding or shaking his head to the questions posed. Dr. Hester stated: "At that time, he did nod his head to my question as to whether he * * * deliberately tried to kill himself or do himself in." Both doctors admitted, however, that at the time of their questioning plaintiff may have been confused.

Plaintiff denied the shooting was intentional and testified that on the morning of the incident, after he had arrived at work, he decided to clean a pistol which he kept in his desk. He stated that after cleaning and oiling the gun, he reloaded it and, thereafter, could not remember how the gun fired. Plaintiff also introduced testimony that a bolt was missing from the office chair in which he had been sitting, inferring that the chair may have broken and that the gun may have discharged as he fell. The trial court, however, rejected a finding submitted by plaintiff on this issue.

Testimony at trial was conflicting concerning whether a motive existed for the shooting. No suicide note was found. Dr. Payton testified that plaintiff did not fit the pattern of a middle-aged male suicide, and there was no history of prior depression.

Plaintiff told Drs. Hester and Payton that he had been worried he might lose his job if the company were sold.

A firearm's expert, Max Courtney, identified the pistol as a .38 revolver, and testified that he could not give a definite opinion as to how the gun was fired, that he was not certain the gun was discharged by pulling the trigger, and that the hammer block mechanism was only marginally working. Courtney testified that it was extremely difficult to fire the gun without pulling the trigger.

Plaintiff testified that he had purchased the gun several years prior and kept it because it was his responsibility to answer alarms at the business and, at times, he was required to go to the warehouse at night and weekends when the building was deserted. Other executives of plaintiff's company were also on the list of employees to be called when an alarm went off. Plaintiff's employer did not require him to possess a gun, but was aware that certain employees, including plaintiff, kept a handgun. Plaintiff also testified that he took the pistol with him when he went on vacations and, at times, he kept it in his car at home when there had been burglaries reported in his neighborhood. Plaintiff's wife testified that she did not like the gun in her house and had requested that her husband keep it elsewhere.

Plaintiff testified that he was not told by his employer to obtain a gun. He also stated that, since the alarm system of his company had been replaced, he had not had an occasion to use the gun. There was no company policy regarding the possession of firearms by employees. Plaintiff testified that possession of the gun, while not prohibited by his employer, was not a requirement of the job and that it was not normal practice of employees of the company to carry weapons. However, plaintiff also testified that he had the gun because of work.

The trial court adopted findings of fact and conclusions of law upholding plaintiff's claim for worker's compensation benefits. Specifically, the court found that plaintiff did not intend to shoot himself and that "[t]he gun accidentally discharged while plaintiff was cleaning it, wounding him in the face."

■ Defendants contend that the event was an attempted suicide. We disagree. There was sufficient evidence upon which the trial court could have found that plaintiff did not intend to commit suicide. Defendants recognize that, in worker's compensation cases, there is a presumption against suicide and that suicide is an affirmative defense which the defendants have to prove. *See Medina v. New Mexico Consolidated Mining Co.*, 51 N.M. 493, 188 P.2d 343 (1947). *Medina* states, "This presumption, though not conclusive, is sufficient unless rebutted by substantial evidence, to support an award for compensation." Defendants contend that there was substantial evidence to rebut the presumption and, accordingly, contend that the trial court erred in not finding that plaintiff intended to commit suicide.

■ Defendants' evidence supporting suicide was that the gun was in contact with plaintiff's skin (physicians' notes that the wound was stellate and expert's opinion that only a contact shot would yield a stellate wound), plaintiff pulled the trigger (expert's opinion that this was most likely way that gun discharged), plaintiff said he tried to commit suicide (his nodding to doctors when they asked that question), and plaintiff had a motive to commit suicide (his worry over the sale of the business and loss of his job). Plaintiff controverted each of these items. The evidence that there were multiple stellate wounds in both the roof and floor of the mouth cast doubt on the expert's knowledge of the types of flesh wounds which shots from different distances produce. The expert really did not know how the gun fired. There was evidence that plaintiff did not understand the doctors when they asked him about the

suicide attempt. Moreover, there was abundant evidence that plaintiff never expressed a reason to commit suicide, that he was happy and relaxed, that he did not point the gun in the right place to commit suicide, that he did not leave a suicide note, and that he did not fit the pattern of a typical middle-aged man attempting suicide. Finally, defendant's purported motive evidence concerning the sale of the business was shown not to have crossed plaintiff's mind. This evidence is similar to the evidence in the *Medina* case in which the Supreme Court held that a question for the fact finder was presented.

Here, too, the question was one for the trial court. As stated in *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985):

> This court is bound to view the evidence in the light most favorable to support the trial court's findings * * * and to disregard all evidence unfavorable to that finding * * *. It is for the trier of fact to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies. * The appellate court may not reweigh the evidence * * * nor substitute its judgment for that of the trier of fact. [Citations omitted.]

When viewed in the appropriate manner, there was sufficient evidence upon which the trial court could find that plaintiff did not attempt to commit suicide because the evidence and inferences therefrom conflicted.

Given that there was sufficient evidence upon which the trial court could find attempted suicide, there are only two remaining possibilities to explain this otherwise unexplained event: either plaintiff accidentally shot himself while finishing his cleaning of the gun and putting it away, or he shot himself while horsing around with the gun after he cleaned it. As the discussion in *Medina* makes clear, in worker's compensation cases, courts usually uphold awards of compensation in cases of unexplained death.

Two more recent New Mexico cases illustrate this principle. In *Thigpen v. County of Valencia*, 89 N.M. 299, 551 P.2d 989 (Ct.App.1976), a deputy sheriff was found dead of shotgun wounds in his car near the tank he used to water his horses. The shotgun was lying on the floor of the car. Thigpen was allowed to water his horses during his duty hours. This Court reversed the trial court's dismissal of the case at the close of plaintiff's evidence. Thus, on the *Thigpen* facts, a judgment in favor of plaintiff would have been sustained. *See also Sena v. Continental Casualty Co.*, 97 N.M. 753, 643 P.2d 622 (Ct. App.1982).

These cases represent the principle of applying a rebuttable presumption that the death arose out of the employment under facts such as we have here. " 'When the reason or cause for the accident is not explained, and it occurred during the time decedent was at work, the fundamental theory underlying our workmen's compensation law favors recovery rather than denial of compensation.' " *Sena, quoting Ensley v. Grace*, 76 N.M. 691, 417 P.2d 885 (1966).

Defendants seek to avoid a result foreshadowed by these cases by contending that the gun was not related to the employment. They rely on *Adamchek v. Gemm Enterprises, Inc.*, 96 N.M. 24, 627 P.2d 866 (1981), and its language that "a pistol in the hands of a corporate executive cannot be said to be a device or tool of his trade normally used in the performance of his executive duties." In *Adamchek*, the business was a restaurant and there was no evidence, or at least no evidence recited in the opinion, that a gun was in any way necessary or desirable in the hands of the officer of the corporation.

Although *Adamchek* could be read to support the proposition that, as a matter of law, a gun is never a necessary tool of the trade for a corporate executive, defendants

do not read it so broadly. "Defendants do not, of course, suggest that [*Adamchek*] holds that corporate executives need never use a gun as an incident of their employment * * *." Defendants recognize that in some cases there will be evidence which will justify the use of a gun by one in the position of a corporate executive. Thus, the apparent absence of such evidence in *Adamchek* makes that case distinguishable and not authority for reversal as a matter of law in this case.

■ Defendants do contend that there was insufficient evidence in this case to support a holding that it was logical for plaintiff to possess a gun in order to advance his employer's interests. This contention challenges the trial court's findings 4, 8, and 9. These findings are to the effect that plaintiff's employment required him to answer security alarms and work at night and on weekends, that plaintiff continued to take the gun with him on these occasions, and that the gun was kept and used by plaintiff solely for the protection of the employer's property and the protection of plaintiff while he was working. Defendants challenge these findings as misleading and contrary to logic. They argue that once the alarm system was changed plaintiff no longer had any use for the gun at work. They argue it would be absurd to conclude otherwise when plaintiff kept the gun in his desk inside the building, an unlikely place to keep the gun to respond to alarms. They argue that, at the time of the incident, plaintiff kept the gun because he did not know what else to do with it.

Certainly, defendants' view of the evidence is one legitimate view. However, the question on appeal is not whether there was evidence to support an opposite result but, rather, whether the evidence supports the result reached. *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 716 P.2d 645 (Ct.App.1986); *Bagwell v. Shady Grove Truck Stop*, 104 N.M. 14, 715 P.2d 462 (Ct.App.1986). Defendants' factual arguments are more properly addressed to the trial court.

It is true there was no direct evidence to support each of the trial court's challenged findings. For example, plaintiff never directly testified that at the time of the incident he still carried the gun with him on alarm calls or at night or on weekends. However, plaintiff did testify that he did buy the gun to have with him at these times and he also testified that he currently kept the gun for the protection of his employer and himself at work. It is thus a reasonable inference that he still used the gun for these work-related purposes. In short, there was substantial evidence that the gun was kept for a work-related purpose.

■ Defendants' second contention relating to the gun is that plaintiff was not doing anything work-related when the incident occurred. This involves a challenge to the trial court's finding number 10 that plaintiff was cleaning the gun. Defendants contend that by spraying the gun with WD–40 and wiping it off plaintiff was not cleaning the gun in the conventional sense and was just whiling away time waiting for the coffee to be ready. This contention ignores plaintiff's testimony that this was how he always cleaned the gun. Every six months or so, he would spray it with WD–40 and wipe it off so that fingerprints would not rust it. Defendants' expert never testified that this was not a legitimate way to clean a gun, nor did he say that such cleaning was unnecessary or unreasonable, as defendants imply. Thus, the evidence supported both the trial court's finding that plaintiff was cleaning the gun and the implied finding that such cleaning was work-related, given the fact that the gun was work-related.

■ Defendants' final contention relies on *Losinski v. Drs. Corcoran, Barkoff & Stagnone, P.A.*, 97 N.M. 79, 636 P.2d 898 (Ct.App.1981). In that case, a doctor's receptionist became nauseous after eating a doughnut at work. She tried to induce vomiting by pushing a pen down her throat

and swallowed the pen. This Court reversed an award of compensation because the injury did not arise out of employment. "Arise out of employment" means that the injury must be caused by a risk to which the worker is subjected in the employment. Pushing a pen down one's throat is not such a risk. Similarly, here, defendants contend that putting a gun to one's chin and pulling the trigger is not such a risk. Defendants also repeat their arguments that the gun was not necessary to the employment and that plaintiff was not cleaning it.

Defendants also rely on a number of out-of-state cases in which compensation was denied because the guns were not being used for the employment at the time of the injury or because the tools of the trade were being misused for purposes unrelated to the employment at the time of the injury. *See Peetz v. Industrial Commission*, 124 Ariz. 324, 604 P.2d 255 (1979) (en banc) (gun accidentally discharged when policeman was showing it to his wife); *Horn v. Broadway Garage*, 186 Okl. 535, 99 P.2d 150 (1940) (worker trying to shoot a paper clip with a rubber band). These cases are more like *Losinski* in which the worker was not using the tool in the trade; rather, she was using it for personal reasons or misusing it.

Here, because there was substantial evidence that the worker used the gun in his business and that the worker was cleaning it so that it would be operational, *Losinski* and the out-of-state cases are inapposite. Moreover, no one knows whether the worker was misusing the gun or not at the time he was shot. Under these circumstances, the doctrine concerning unexplained injury comes to the worker's aid and suffices to uphold the trial court's judgment.

Defendants' arguments, that there is a more reasonable way to view the evidence and that the view adopted by the trial court is nonsensical, ask for this Court to reweigh the evidence. This the Court cannot do. *Sanchez*. Defendants' reliance on certain statements made by plaintiff in his testimony as "proof positive" of the force of defendants' arguments similarly misconstrues the nature of appellate review. Plaintiff's testimony was conflicting within itself. For example, at one point he acknowledged that he had not needed the gun for a number of years; at another point he said that the gun was for the protection of the company. It is for the trial court to resolve the conflicts even if those conflicts occur within the testimony of one witness. *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967).

Cases such as *Medina, Thigpen,* and *Sena* amply support the judgment. *Adamchek* is distinguishable. For this reason, we affirm. Plaintiff is awarded $3,000 for attorney fees for the services of counsel on appeal.

IT IS SO ORDERED.

BIVINS, J., concurs.

DONNELLY, J., dissents.

DONNELLY, Judge (dissenting).

I respectfully dissent.

This appeal involves the question of whether a disability resulting from a self-inflicted gunshot wound sustained by the plaintiff, a general manager of a liquor wholesale company, is compensable under the Workmen's Compensation Act. On the date in question, plaintiff arrived early at work and shortly thereafter was found on the floor of his office with a gunshot wound to the head, still holding a pistol.

The evidence at trial was conflicting as to whether the shooting was accidental or intentional. Plaintiff testified that he decided to clean a pistol kept by him in his desk at the office and that it accidentally discharged. A psychiatrist and a psychologist who treated plaintiff after the injury, testified that plaintiff stated that he had been worried over the possible loss of his job and had responded to questions, indicating that the injury was intentional and self-inflicted.

The dispositive issue governing the case before us is whether the injury sustained by plaintiff was reasonably incident to and arose out of his employment. I am unable to agree with the majority that the trial court's key finding, that the injury "arose out of" plaintiff's employment, is supported by substantial evidence. Here, in my opinion, the record is devoid of substantial evidence indicating that at the time of plaintiff's injury he was engaged in an activity reasonably incident to or in furtherance of the employer's business, or that plaintiff's injury stemmed from a risk that he was subjected to by reason of his employment.

In order to establish liability under the Workmen's Compensation Act, a claim must be supported by substantial evidence indicating the existence of "an accidental injury arising out of, and in the course of [the worker's] employment" and that the injury was "reasonably incident to [the worker's] employment." NMSA 1978, § 52-1-28. *See also* NMSA 1978, § 52-1-19; *Hernandez v. Home Education Livelihood Program, Inc.*, 98 N.M. 125, 645 P.2d 1381 (Ct.App.1982).

Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion. *Gutierrez v. City of Gallup*, 102 N.M. 647, 651, 699 P.2d 120 (Ct.App.1984); *Crane v. San Juan County*, 100 N.M. 600, 602, 673 P.2d 1333 (Ct.App.1983). Whether the record contains substantial evidence is a question of law. *Pickens-Bond Construction Co. v. Case*, 266 Ark. 323, 584 S.W.2d 21 (Ark.1979).

In the present case, although the injury occurred on the employer's premises during work hours, the injury did not "arise out of" plaintiff's employment, nor was the injury "reasonably incident" to his employment. The necessity that an injury "must arise out of" and be reasonably incident to a worker's employment, requires a showing that the injury was caused by a risk to which the worker was reasonably subjected by reason of his employment. NMSA 1978,

§ 52-1-28; *Velkovitz v. Penasco Independent School District*, 96 N.M. 577, 633 P.2d 685 (1981); *Williams v. City of Gallup*, 77 N.M. 286, 421 P.2d 804 (1966); *Beckham v. Estate of Brown*, 100 N.M. 1, 664 P.2d 1014 (Ct.App.1983); *McDaniel v. City of Albuquerque*, 99 N.M. 54, 653 P.2d 885 (Ct.App.1982); *Losinski v. Corcoran*, 97 N.M. 79, 636 P.2d 898 (Ct.App.1981). *See also Shadbolt v. Schneider, Inc.*, 103 N.M. 544, 710 P.2d 738 (Ct.App.1985).

Whether an injury occurs in the course of employment relates to the time, place and circumstances under which the accident takes place. *Sena v. Continental Casualty Co.*, 97 N.M. 753, 643 P.2d 622 (Ct.App.1982). If the plaintiff was not reasonably involved in fulfilling the duties of his employment at the time of the injury, he was not acting within the course of his employment. *Gutierrez v. Artesia Public Schools*, 92 N.M. 112, 583 P.2d 476 (Ct.App. 1978). As stated in *McDaniel v. City of Albuquerque:*

> The "arising out of" requirement excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause; the causative danger must be peculiar to the work, it must not be independent of the relation of master and servant. After the event it must appear that the accidental injury had its *origin* in a risk connected with the employment and have flowed from the risk as a rational consequence.

*Id.* 99 N.M. at 55-56, 653 P.2d at 886-887 (emphasis in original).

In *Adamchek v. Gemm Enterprises, Inc.*, 96 N.M. 24, 627 P.2d 866 (1981), the supreme court considered a claim arising out of an incident whereby a workman was injured at work by a gunshot inflicted by an officer of a corporation who was playing with a revolver. The weapon accidentally discharged striking the employee. On appeal, the supreme court held that plaintiff could sue his employer in tort and that his personal injury action was not barred by the exclusivity provisions of the Work-

.. 

men's Compensation Act because the shooting was not a risk reasonably incident to the employee's work and the resulting injury was not caused by a danger peculiar to the plaintiff's employment. The court also held:

> [A] pistol in the hands of a corporate executive cannot be said to be a device or tool of his trade normally used in the performance of his executive duties. The negligent injury of an employee through the accidental discharge of such a pistol does not ordinarily arise out of the employment.

*Id.* 96 N.M. at 25, 627 P.2d at 867.

The rationale applied by the court in *Adamchek* is applicable here. It is not sufficient that the injury occur during the course of an individual's work, it must also arise out of the claimant's employment and stem from a risk reasonably incident to the claimant's work. *See also Ward v. Halliburton Co.,* 76 N.M. 463, 415 P.2d 847 (1966); *Walker v. Woldridge,* 58 N.M. 183, 268 P.2d 579 (1954). Requisite proof that the injury here "arose out of" or had its origin in a risk reasonably emanating from plaintiff's employment, is absent in the instant case.