771 P.2d 173

**MORTGAGE INVESTMENT COMPANY OF EL PASO and the Home Insurance Companies, Petitioners,**

v.

**Pilar GRIEGO, Respondent.**

No. 17692.

Supreme Court of New Mexico.

March 24, 1989.

Rehearing Denied April 18, 1989.

Butt, Thornton & Baehr, David M. Houliston, Albuquerque, for petitioners.

E. Justin Pennington, Albuquerque, for respondent.

## OPINION

STOWERS, Justice.

We granted certiorari in this workers' compensation action to consider whether under the facts of this case the death of a worker at his place of employment satisfies the "arising out of" employment requirement of the New Mexico Workers' Compensation Act, NMSA 1978, Section 52–1–28 (Repl.Pamp.1987).

Plaintiff-respondent, Pilar Griego, is the surviving spouse of Robert Griego, decedent. On August 16, 1984, Robert Griego was employed as a loan officer by defendant-petitioner, Mortgage Investment Company of El Paso (MICO). Between 9:00 and 10:00 that morning, Robert Griego was shot to death while at work in his office. There were no witnesses to the shooting. For a period of approximately one year following Robert Griego's death, respon-

dent collected death benefits as provided by the Workers' Compensation Act. After Angel R. Martinez pled guilty to the charge of voluntary manslaughter in the death of Robert Griego, respondent's death benefits were terminated.

Respondent filed a complaint for restoration of these death benefits, claiming that Robert Griego's death "arose out of" his employment with MICO and, therefore, his death was compensable under the Workers' Compensation Act. Petitioners, MICO and The Home Insurance Companies, counterclaimed, requesting reimbursement of amounts received by respondent as a result of Robert Griego's death.

After a trial on the merits, the district court entered judgment dismissing respondent's claim and petitioners' counterclaim. The trial court made the following findings: The decedent's office was located in a public area, which was well trafficked and easily visible to the general public; the decedent did not work in a high crime area; Angel R. Martinez is the perpetrator in the death of Robert Griego; the reason or motivating cause of decedent's death is unknown or unexplained, but may have been explained by Angel or Dorothy Martinez, husband and wife, had they been asked or subpoenaed to testify; *respondent failed to produce sufficient credible evidence to establish that the decedent's death was caused by a risk incident to his employment with MICO or that it was a natural consequence of that employment; respondent failed to produce sufficient credible evidence to establish that the decedent's death arose out of his employment with MICO;* and, petitioners failed to produce sufficient credible evidence that decedent's death was motivated by jealous revenge on the part of Angel R. Martinez. As a result of these findings, the trial court concluded that respondent failed to meet the necessary burden of proof that decedent's death "arose out of" his employment with MICO. And further, petitioners were not entitled to an offset or reimbursement for benefits paid. Respondent appealed and petitioners cross-appealed.

The court of appeals concluded that this case is controlled by *Ensley v. Grace,* 76 N.M. 691, 417 P.2d 885 (1966), because the trial court had determined that the cause of Griego's death is unknown and unexplained. Under *Ensley,* the court reasoned, respondent was entitled to the presumption that Griego's death arose out of his employment with MICO, and petitioners failed to rebut this presumption with credible evidence. The court of appeals reversed the district court's decision denying respondent's claim for death benefits and affirmed the denial of petitioners' counterclaim for reimbursement. We granted certiorari, and now reverse the court of appeals' decision on respondent's claim for death benefits.

■ In order to establish liability under the Workers' Compensation Act, a claim must be supported by substantial evidence indicating the existence of "an accidental injury arising out of, and in the course of [the worker's] employment," and that the injury must be "reasonably incident to [the worker's] employment." NMSA 1978, § 52–1–28. *See also* § 52–1–19. Whether an injury occurs in the course of employment relates to the time, place, and circumstances under which the accident takes place. *Sena v. Continental Casualty Co.,* 97 N.M. 753, 755, 643 P.2d 622, 624 (Ct. App.1982). If the worker was not reasonably involved in fulfilling the duties of his employment at the time of his injury, he was not acting within the course of his employment. *Gutierrez v. Artesia Pub. Schools,* 92 N.M. 112, 583 P.2d 476 (Ct.App. 1978). The necessity that an injury "arise out of" and be incident to a worker's employment requires a showing that the injury was caused by a risk to which the worker was reasonably subjected by reason of his employment. *Velkovitz v. Penasco Indep. School Dist.,* 96 N.M. 577, 633 P.2d 685 (1981).

The "arising out of" requirement excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause; the causative danger must be peculiar to the work, it must not be independent of the relation of master and servant. After the event it

must appear that the accidental injury had its *origin* in a risk connected with the employment and have flowed from the risk as a rational consequence. [Emphasis in original.]

*McDaniel v. City of Albuquerque,* 99 N.M. 54, 55–56, 653 P.2d 885, 886–87 (Ct.App. 1982). The burden of proof, however, is always on the claimant to show that the employee sustained an accidental injury in the course of and arising out of his employment. *Clower v. Grossman,* 55 N.M. 546, 549, 237 P.2d 353, 354 (1951); *Sena,* 97 N.M. at 756, 643 P.2d at 625.

Before trial in the present case, respondent and petitioners stipulated that Robert Griego's death occurred during the course of his employment. Hence, the only issue which remained to be tried was whether his death *"arose out of"* his employment *within the meaning of Section 52–1–28.*

■ "When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, *in the absence of any evidence of what caused the death,* most courts will indulge a presumption or inference that the death arose out of the employment." 1 A. Larson, *Workmen's Compensation Laws* § 10.32 (1985) (emphasis added); *accord Ensley,* 76 N.M. at 695, 417 P.2d at 887. In *Ensley* we held that, because the facts were uncontradicted, evidence of an unexplained assault on the employee by her co-employee while she was at work at her usual place of employment did not rebut the presumption that her death arose out of the employment. *Ensley,* 76 N.M. at 696, 417 P.2d at 888. Thus, we based the permissive presumption of compensability applicable in that case on "logical" as well as "policy" grounds.

"Until the adoption of the Rules of Evidence in 1973, the law in New Mexico was that a presumption ceases to exist upon the introduction of evidence which would support a finding of its nonexistence." *Trujillo v. Chavez,* 93 N.M. 626, 629, 603 P.2d 736, 739 (Ct.App.1979); *see also Morris v. Cartwright,* 57 N.M. 328, 258 P.2d 719 (1953). This theory of presumptions known as the "Thayer–Wigmore" or "bursting

bubble" theory was eliminated when the 1973 Rules of Evidence were adopted by this court. *Trujillo,* 93 N.M. at 629, 603 P.2d at 739; *accord Benham v. All Seasons Child Care, Inc.,* 101 N.M. 636, 638–39, 686 P.2d 978, 980–81 (Ct.App.), *cert. denied,* 101 N.M. 686, 687 P.2d 743 (1984). As stated by the court of appeals in *State Farm Automobile Insurance Co. v. Duran,* 93 N.M. 489, 492, 601 P.2d 722, 725 (Ct.App.1979):

Rule 301 ... provides that, * * * "a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Thus the inference may continue to operate in an evidentiary sense even after introduction of evidence tending to establish the contrary, and may sufficiently influence the trier of facts to conclude that the presumed fact does exist.

*See also Benham,* 101 N.M. at 639, 686 P.2d at 981. In 1980 Rule 301 was amended to eliminate the shift in the burden of persuasion. Rule 301, now codified in SCRA 1986, 11–301 (formerly NMSA 1978, Evid. Rule 301 (Repl.Pamp.1983)), reads:

In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

■ Our Rule 301 is patterned after the comparable federal rule, Fed.R.Evid. 301. According to the judiciary committee notes, a presumption does not vanish upon the introduction of contradictory evidence. Instead, it shifts to the party against whom the presumption is directed the burden of going forward with evidence to meet or rebut the presumption, but it does not shift to that party the burden of persuasion on the existence of the presumed fact. If the adverse party offers no evidence contradicting the presumed fact, the trial court

will instruct the jury that if it finds the basic facts, it *may* presume the existence of the presumed fact. If the adverse party does offer evidence contradicting the presumed fact, the court cannot instruct the jury that it may presume the existence of the presumed fact from proof of the basic fact. The court may, however, instruct the jury that it may infer the existence of the presumed fact from proof of the basic facts. Fed.R.Evid. 301 advisory committee's note.

The effect of the federal rule was to make clear that, while evidence of facts giving rise to a presumption shifts the burden of coming forward with evidence to rebut or meet the presumption, it does not shift the burden of persuasion or the existence of the presumed fact. The burden of persuasion remains on the party to whom it is allocated under the rules governing the allocation in the first instance. *See* Fed.R. Evid. 301 and SCRA 1986, 11–301.

Presumptions governed by the federal rule operate to avoid a directed verdict and to justify an instruction to the jury. 21 C. Wright and K. Graham, *Federal Practice and Procedure* § 5123 (1977). Nevertheless, the rule applies to civil nonjury as well as jury proceedings.

There are, of course, no instructions and no motions for a directed verdict in cases tried to the court. The motion for an involuntary dismissal at the conclusion of the plaintiff's case is not the same as a directed verdict since the judge actually weighs the evidence rather than judging its sufficiency to support a verdict. Therefore, as a practical matter, presumptions in a civil nonjury trial under Rule 301 are little more than rhetorical devices; *one can argue them to a judge but they have no mandatory effect upon his decision.* [Emphasis aded.]

*Id.* (footnotes omitted)

Our rule of evidence imposes only a burden of production on the party against whom the presumption is directed. *See Benham*, 101 N.M. at 639, 686 P.2d at 981. In the instant case the presumption that Griego's death arose out of his employment was directed against MICO. To overcome this presumed fact, MICO had the burden of coming forward with evidence to prove its nonexistence, namely, Griego's death did not arise out of his employment. Whether or not MICO met its burden of production, the presumption did not disappear. And the burden of persuasion on the existence of the presumed fact remained throughout the trial on the party invoking the presumption. *See* SCRA 1986, 11–301.

The district court found that the production of evidence did not suffice to meet MICO's burden of production in this case.

The burden that Rule 301 places upon the adverse party "of going forward with evidence to rebut or meet the presumption" is a burden that is similar to the burden of proof, in that whether it has been satisfied is left to the [fact finder]; it is the risk that if the opponent of the presumption does not come up with any evidence to contradict the presumed fact, the [fact finder] may choose to find in accordance with the presumption. * * * [If] the opponent introduces evidence to prove the non-existence of the presumed fact * * * [and] that evidence would not be sufficient to support a jury finding that the presumed fact did not exist, it would have the same effect on the presumption as no evidence at all * * * [T]he [fact finder] * * * may find the presumed fact, but is not compelled to do so. If, however, the evidence is sufficient to support a finding that the presumed fact did not exist, this evidence does not eliminate the presumption from the case * * *. [In that case] the [fact finder] may infer the existence of the presumed fact from proof of the basic facts.

C. Wright and K. Graham § 5126 (footnotes omitted).

The trial judge found that MICO failed to rebut the presumption. As the fact finder, he was entitled to presume that Griego's death arose out of Griego's employment. He was not, however, *required* to make this presumption, and upon weighing the evidence, he correctly resolved the issue against Greigo. The claimant did not

meet her burden of persuasion that the death of Griego was work related.

■ We need not address the issue of whether petitioners are entitled to reimbursement of the death benefits paid to respondent, since this issue was not included in the petition for writ of certiorari. *See* SCRA 1986, 12–502(C)(2). For these reasons, the court of appeals is reversed and the judgment of the district court is affirmed.

IT IS SO ORDERED.

RANSOM and BACA, JJ., concur.

SCARBOROUGH, J., concurring in result only.

SOSA, C.J., dissenting.

SOSA, Chief Justice (dissenting).

I hereby adopt as my dissent the majority opinion of the court of appeals as appended herein in full.

## APPENDIX

### MEMORANDUM OPINION

GARCIA, Judge.

Plaintiff appeals and defendants cross-appeal from the trial court's judgment dismissing plaintiff's complaint for worker's compensation death benefits and defendants' counterclaim for reimbursement, and denying plaintiff attorney fees for successfully defending against defendants' counterclaim. We reverse the dismissal of plaintiff's complaint and the denial of attorney fees and affirm the trial court's denial of defendants' counterclaim.

Plaintiff's decedent, Robert Griego (Griego), was employed as a loan officer by defendant Mortgage Investment Company of El Paso. While at work during regular business hours, he was beaten, shot and killed. Angel R. Martinez (Martinez) later pled to the charge of voluntary manslaughter in the death of Griego, pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Based on this plea, the trial court found that Martinez was the perpetrator of Griego's death. Defendants, in an effort to demonstrate that Griego's death did not arise out of his employment, attempted to show that Martinez's motivation for killing Griego was an extramarital affair he had had ten years previously with Martinez's wife. There was also evidence that Griego had foreclosed on the Martinezes home in 1974.

The trial court found that the statements of Griego's family regarding the alleged affair were not credible and that defendants had failed to produce sufficient credible evidence that Griego's death was motivated by jealous revenge. The trial court also determined that: "[t]he reason or motivating cause of Robert Griego's death is unknown and unexplained, but may have been explained by Angel R. Martinez and/or Dorothy Martinez had they been asked or subpoenaed to testify." The trial court also found, however, that plaintiff had failed to produce sufficient credible evidence to establish that Griego's death was caused by a risk incident to, was a natural consequence of, or arose out of his employment.

Plaintiff has briefed the following issues on appeal: (1) whether the trial court erred in granting summary judgment on the identity of the murderer; (2) whether the trial court erred in holding the summary judgment in abeyance during trial and in admitting evidence relevant to this issue; (3) whether plaintiff had met her burden in establishing that Griego's death arose out of his employment; and (4) whether plaintiff is entitled to recover her costs and attorney fees. In their cross-appeal, defendants claim the trial court improperly shifted the burden of proving the motivation for the killing from plaintiff to defendants and erred in denying their claim for reimbursement.

Because the trial court determined that the reason or motivating cause of Griego's death is unknown and unexplained, this case is controlled by *Ensley v. Grace,* 76 N.M. 691, 417 P.2d 885 (1966). The fact that Griego was murdered while at work during regular business hours is undisputed. In *Ensley,* the supreme court determined that when a worker dies at work and the cause of death is unexplained, it is

presumed that the death arose out of the employment. *Id.*

Although defendants presented evidence which might have explained Griego's cause of death, the trial court explicitly determined that this evidence was not sufficiently credible to prove jealous revenge as the motive. *Cf. Gutierrez v. Artesia Pub. Schools,* 92 N.M. 112, 583 P.2d 476 (Ct.App. 1978) (worker's compensation not available for widow of decedent who, while at work, was killed by another for personal reasons bearing no relation to decedent's employment). The fact that there exists evidence consistent with defendant's view of the case is of no consequence. On appeal, we must determine if there is substantial evidence to support the trial court's findings. This court does not reweigh the evidence or determine the credibility of the witnesses. *Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 697 P.2d 156 (Ct.App.1985). Rather, we defer to the fact finder who heard the testimony, saw the witnesses and ultimately determined that the evidence proving jealous revenge was not credible. In upholding this determination, however, we must further determine that the *Ensley* presumption is applicable.

Since plaintiff was entitled by law to a rebuttable presumption that Griego's death arose out of the employment and defendants failed to rebut this presumption with credible evidence, the trial court erred both in finding that plaintiff failed to establish Griego's death arose out of the employment and in denying plaintiff death benefits. *See Ensley v. Grace.* Accordingly, we reverse and remand this case for a determination of the appropriate amount of death benefits.

Based on the above disposition, we need not reach plaintiff's first two issues regarding summary judgment or the admission of evidence as to the identity of the murderer.

Plaintiff also asserts that she was entitled to attorney fees for successfully defending against defendants' counterclaim. We agree. By analogy, NMSA 1978, Section 52–1–54(E) (Repl.Pamp.1987) provides for the payment of a worker's attorney fees where an employer failed to establish that the worker's disability diminished under NMSA 1978, Section 52–1–56 (Repl. Pamp.1987). Because defendants failed to establish their right to reimbursement, plaintiff's attorney fees related to the efforts of plaintiff's attorney in preserving plaintiff's right to those death benefits previously paid and are, thus, recoverable. *See Jaramillo v. Kaufman Plumbing & Heating Co.,* 103 N.M. 400, 708 P.2d 312 (1985). Accordingly, we reverse the trial court's denial of plaintiff's attorney fees. On remand the trial court should award fees for plaintiff's success in defending against defendants' counterclaim and shall consider plaintiff's attorney's efforts on appeal. *See Nelson v. Nelson Chem. Corp.,* 105 N.M. 493, 734 P.2d 273 (Ct.App.1987).

In light of the above discussion, it is clear that the trial court did not improperly shift the burden of proof to defendants. Since plaintiff is entitled to receive death benefits, defendants have no claim for reimbursement of monies paid as death benefits. Accordingly, we affirm the trial court's denial of defendants' claim for reimbursement of the death benefits paid. *Ensley v. Grace.*

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.